Justin E. Rawlins (admitted *pro hac vice*)
Daniel J. McGuire (admitted *pro hac vice*)
Carrie V. Hardman
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700

**Hearing Date**: May 16, 2018 at 2:00 PM ET

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RELATIVITY MEDIA, LLC, *et al.*,[1] | Case No. 18-11358 (MEW) |
| Debtors. | (Jointly Administered) |

## DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO OBTAIN TAIL INSURANCE TO CONTINUE PREPETITION INSURANCE COVERAGE AND PAY OBLIGATIONS RELATING THERETO

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")

submit this motion (the "**Motion**"), by and through their undersigned proposed counsel, for entry

of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"),

authorizing the Debtors to enter into the D&O Tail Policies (as defined below) and pay obligations

relating thereto.  In support of this Motion, the Debtors respectfully represent and set forth as

follows:

---

[1] Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth (a) in the *Order (A) Authorizing the Joint Administration of their Chapter 11 Cases and (B) Waiving Requirements of Section 342(C)(1) of the Bankruptcy Code and Bankruptcy Rule 2002(n)* [Docket No. 5] and (b) at https://cases.primeclerk.com/relativity.  The location of Relativity Media, LLC's corporate headquarters and the Debtors' service address is: 9242 Beverly Blvd #300, Beverly Hills, CA 90210.

## Jurisdiction

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105(a), 363, 1107(a), 1108 and 1112 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## Background

3.      On May 3, 2018, each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code (the "**Petition Date**").

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  No committees have yet been appointed or designated in these chapter 11 cases.

5.      The Debtors operate a portfolio of major studio quality film assets with the capabilities and infrastructure to produce and distribute new content.

6.      Additional factual background relating to the Debtors' businesses and the commencement of these chapter 11 cases is set forth in detail in the (a) *Declaration of Lori Sinanyan in Support of Chapter 11 Petitions, First Day Pleadings and Proposed Sale* [Docket No. 8] (the "**Sinanyan Declaration**") and (b) *Declaration of Colin Adams in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 7] (the "**Adams Declaration**" and, together with the Sinanyan Declaration, the "**First Day Declarations**").  Furthermore, additional detail specific

to this Motion is set forth in the *Declaration of Colin Adams*, appended hereto as **Exhibit B** and incorporated herein by reference (the "**Adams Tail Insurance Declaration**").

7.      On May 9, 2018, the Court held a hearing regarding a number of the Debtors' motions seeking initial relief (the "**May 9 Hearing**") including, without limitation, the *Debtors' Motion For Entry Of Interim And Final Orders: (I) Authorizing The Debtors To (A) Obtain Post-Petition Financing And (B) Use Cash Collateral; (II) Granting Adequate Protection; (III) Modifying The Automatic Stay; (IV) Scheduling A Final Hearing; And (V) Granting Related Relief* [Docket No. 17] (the "**DIP Motion**").

8.      At the May 9 Hearing, the Court inquired as to the line item in the budget—attached as Exhibit B to the DIP Motion—relating to the provision of funds to pay for insurance.  Further discussion ensued and, ultimately, the Court invited the Debtors to file a motion—this Motion—seeking authorization to enter into the D&O Tail Policies (as defined herein) relating to this line item in the budget,.

**A.      The D&O Insurance Policies**

9.      On May 8, 2018, the Debtors filed their *Motion for an Order (A) Authorizing, But Not Directing, the Debtors to Continue Prepetition Insurance Coverage and Pay Prepetition Obligations Relating Thereto and (B) Authorizing, But Not Directing, All Financial Institutions to Honor All Related Payment Requests* [Docket No. 15] (the "**Insurance Motion**"), seeking authority to continue their insurance programs including, without limitation, the following directors and officers liability insurance policies (the "**D&O Policies**"):

| Type of Coverage | Insurance Carrier | Policy Number | Duration | Annual Premium | Description of Payment | Next Payment Date |
|---|---|---|---|---|---|---|
| D&O | XL Specialty Insurance Company | ELU15168617 | 8/24/2017 to 8/24/2018 | $199,750 | Paid in Full | 8/24/18 |
| D&O | Argonaut Insurance Company | MLX 7602807-00 | 8/24/2017 to 8/24/2018 | $115,855 | Paid in Full | 8/24/18 |

10.    In furtherance of the Debtors' insurance programs, by the Insurance Motion, the Debtors seek, *inter alia*, authorization to pay premiums coming due in the next 12 months in order to renew such polices upon their expiration.  However, as noted at the May 9 Hearing, payment of these premiums does not account for the Debtors' need to pay premiums to provide certain gap coverage—called a "tail"—on these D&O Policies, which is more fully described immediately below.

**B.    The D&O Tail Policies**

11.    The Debtors maintain the D&O Policies to help manage the various risks associated with their businesses.  Generally, the director and officer ("**D&O**") insurance policy that responds to a claim is the policy in place at the time that the claim is made.  Thus, for example, if actions that occurred in 2017 are challenged in 2018, only a D&O policy that is active in 2018 will cover the actions, assuming that active policy does not exclude prior alleged wrongful acts.

12.    However, in instances of bankruptcy, the D&O policy in place at the time typically ceases to provide coverage for ongoing actions once a change in control of the debtor is triggered; meaning once the company reorganizes and emerges from bankruptcy or is sold, the existing D&O policy will not cover any alleged wrongful acts occurring on or after the effective date of a debtor's plan of reorganization or the closing of a sale of substantially all of the debtor's assets, respectively. At that time, a new D&O policy is issued that specifically excludes coverage for any claims involving conduct occurring prior to the effective date of a reorganization or closing date of a sale.

4

As a result, there is a potential gap in D&O policy coverage for claims made after the original

D&O policy expires but before the new policy is effective.

13.     Thus, a D&O tail policy is a crucial asset of a debtor's estate.  A tail policy

addresses this coverage gap for the debtor's directors and officers post-petition.  When a D&O tail

policy is purchased, the insurance carrier agrees to extend the original D&O policy period, and

thus extending coverage, within which claims can be reported that arise from, in this case,

postpetition/pre-effective date or pre-closing conduct.  Such gap coverage ensures the Debtors,

and consequently their estates (or those standing in the shoes of the estates), will be able to lodge

any appropriate claims under the D&O Policies during the pendency of this case.

14.     Another benefit of a tail policy is that it's generally non-cancelable.  This feature

guarantees that the debtor's former D&Os, and the debtor itself, do not risk losing the coverage

provided by the existing policy, should a purchaser or reorganized entity attempt to cancel and

liquidate the policy for any prorated amounts that would be refunded upon cancellation.

15.     Here, upon his engagement, Colin M. Adams, the Debtors' Chief Restructuring

Officer ("**CRO**") undertook a thorough review of all of the Debtors' insurance policies with the

goals of saving the Debtors' estate money and ensuring there would be no coverage gaps, for the

benefit of the estate and, ultimately, the Debtors' creditors.  In this regard, the Debtors changed

their broker of record to Krauter and Co. (the "**Broker**").  The CRO and the Broker worked with

the Debtors' carriers and after several calls and meetings, the Broker negotiated a deal where the

Debtors would receive $2 million of primary coverage for 3 years for $235,000.00 and excess

coverage of $1 million for 3 years for $68,000 (the "**D&O Tail Policies**").  This aggregate cost of

$303,000 for the D&O Tail Policies, plus an additional discounted extension of the current D&O

Policies to carry the Debtors through the estimated outside completion date of these cases at a cost

of $20,000,[2] is a steep discount from the market cost for such policies,[3] and thus, is an offer

extended by the carriers (via the Broker) only for a short period of time—unless or until there is a

change in the Debtors condition that gives the carriers pause. Thus, time is of the essence in

securing these D&O Tail Policies at this discounted price. Otherwise, the Debtors will be forced

to obtain the D&O Tail Policies at what could amount to nearly double the price.[4]

## Relief Requested

16.     The Debtors request entry of an order authorizing them to enter into the D&O Tail

Policies and to pay any obligations related to the D&O Tail Policies, subject to the Approved

Budget (as defined in the DIP Motion), to the extent the Debtors determine that such payments are

necessary or appropriate to maintain adequate insurance coverage for the Debtors' estates and

assets.

## Basis for Relief

17.     A debtor in possession has a fiduciary duty to protect and preserve the going

concern of its business and maximize the creditors' recoveries. *See In re Ionosphere Clubs, Inc.*,

98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). To achieve this goal, the Bankruptcy Code authorizes

the trustee to "use, sell, or lease" the property after a notice and a hearing and operate the debtor's

business in sections 363 and 1108 of the Bankruptcy Code. 11 U.S.C. §§ 363(b)(1) and 1108. In

---

[2] As described in the Adams Tail Insurance Declaration, the carriers (through negotiations with the Broker) offered a short extension of the current D&O Policies at a discounted price of $10,000 per month (approximately half the typical cost), on the condition that any additional months be purchased at the time the D&O Tail Policies are purchased. The current D&O Policies are set to expire on August 24, 2018. In order to take advantage of this discounted pricing in the event the Debtors cases extend beyond August 24, 2018, the Debtors  seek authority to purchase two months of additional coverage under the current D&O Policies in connection with purchase of the D&O Tail Policies. If these extra months are not needed, the $10,000 per month payments are fully refundable.

[3] For example, the Debtors' prior broker, Arthur J. Gallagher & Co. Insurance Brokers of California, had secured a far more costly quote for the Debtors' tail coverage, at an aggregate cost of $742,000: a primary policy run-off with $2 million of coverage for 3 years for $470,000 due upfront and an excess policy with $2 million of coverage for 1 year for $272,000.00.

[4] *See*, *supra*, n.3.

6

conjunction with sections 363 and 1108, section 1107(a) of the Bankruptcy Code confers upon the debtor in possession the same rights and powers of a trustee granted under chapter 11 of the Bankruptcy Code.  11 U.S.C. § 1107(a).

18.    The debtor-in-possession's right to use property of the estate is limited to those actions that stem from a "good business reason."  *See, e.g., Official Comm. of Unsecured Creditors v. Enron Corp.  (In re Enron Corp.)*, 335 B.R. 22, 27-28 (S.D.N.Y. 2005) (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).  Therefore, when the debtor in possession can justify the use of the property with a reasonable business basis, courts will generally not "entertain objections to the debtor's conduct." *See Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

19.    Furthermore, section 105(a) of the Bankruptcy Code authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  *See Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Den. Group, Inc.)*, 352 F.3d 671, 680 (2d Cir. 2003) ("it is axiomatic that bankruptcy courts are 'courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process'") (quoting *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994)).

20.    As stated previously herein, the Debtors submit that the requested relief is supported by business considerations.  The Debtors' estates would benefit from the provision of the D&O Tail Policies, in preventing a gap in insurance coverage, and payment now at a discounted price will save the Debtors' estate additional costs in what could more than double if they wait until expiration of the D&O Policies.  Moreover, the Debtors' directors and officers cannot

reasonably be asked to accept personal liability for corporate acts if they are going to continue working for the Debtors.

21.     Furthermore, the provision of insurance is essential to the reorganization and going concern of the Debtors, as section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is cause for a mandatory conversion or a dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).

22.     Accordingly, the Debtors respectfully submit that under the circumstances presented herein, there are numerous "good business" justifications for granting the requested relief, which is both necessary and appropriate for the Debtors to continue as a going concern throughout their bankruptcy case.

### Bankruptcy Rule 6003 is Satisfied

23.     To the extent the purchase of a D&O Tail Policies relate to their prepetition D&O Policies, Bankruptcy Rule 6003 provides that to the extent "relief is necessary to avoid immediate and irreparable harm," a Bankruptcy Court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one days after the Petition Date.  Fed. R. Bankr. P. 6003(b).  Harm exists when a debtor's ability to reorganize is threatened or the value of the debtor's estate may decrease without the grant of the requested relief.  *See In re Ames Dep't Stores, Inc*., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990).

24.     As stated herein, entering into the D&O Tail Policies are critical for the continuation of the Debtors' business.  The D&O Tail Policies protect the Debtors' officers and directors, which are vital to a successful reorganization, including any sale of the Debtors' business as a going concern.  As stated above, the currently offered discount for the premium on the D&O Tail Policies is set to expire at any moment.  *See*, *supra*, ¶ 15.  Thus, time is of the essence in securing these D&O Tail Policies at this discounted price; otherwise, the Debtors will be forced to

8

obtain the D&O Tail Policies at what could amount to nearly double the price.  Accordingly, the

Debtors submit that the relief requested is necessary to avoid immediate and irreparable harm, and,

therefore, Bankruptcy Rule 6003 is satisfied.

## Request for Waiver of Any Applicable Stay

25.    As discussed above, the relief sought by this Motion is critical to the Debtors'

continuing business operations and is therefore in the best interests of the estates.  In order to avoid

delay in implementing such relief and the attendant potential harm to the Debtors' business

operations, the Debtors request that the Court waive the notice requirements of Bankruptcy Rule

6004(a) and the 14 day stay imposed by Bankruptcy Rule 6004(h), such that any order on this

Motion will be effective immediately upon entry.

## Debtors' Reservation of Rights

26.    Nothing contained herein is intended or should be construed as an admission as to

the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim,

or an approval or assumption of any agreement, contract, or lease under section 365 of the

Bankruptcy Code.  The Debtors expressly reserve their rights to contest any claims related to the

Insurance Policies under applicable non-bankruptcy law.  Likewise, if the Court grants the relief

sought herein, any payment made pursuant to the Court's order is not intended and should not be

construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to

dispute such claim subsequently.

## Notice

27.    No trustee, examiner, or creditors' committee has been appointed in these chapter

11 cases.  The Debtors have provided notice of this Motion to: (a) the Office of the United States

Trustee for the Southern District of New York; (b) the holders of the 50 largest unsecured claims

against the Debtors (on a consolidated basis); (c) counsel to the agent (and if there is no agent,

9

counsel to the lender(s)) under each of the Debtors' pre-petition financing facilities; (d) counsel to

the DIP Lender and the Prepetition Secured Note Lender (each term as defined in the Interim

Order[5]); (e) the Internal Revenue Service; (f) all parties that have requested notice in this

proceeding pursuant to Bankruptcy Rule 2002; and (g) all parties entitled to notice pursuant to

Local Rule 9013-1(b).  In light of the nature of the relief requested, the Debtors respectfully submit

that no further notice is necessary.

### No Prior Request

28.     No prior request for the relief sought in this Motion has been made to this or any

other court.


WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order

granting the relief requested in the Motion and such other and further relief as may be just and

proper.

Dated:  May 12, 2018
        New York, NY

**WINSTON & STRAWN LLP**

By:  _/s/ Daniel J. McGuire_____
        Justin E. Rawlins (admitted *pro hac vice*)
        Daniel J. McGuire (admitted *pro hac vice*)
        Carrie V. Hardman
        200 Park Avenue
        New York, NY 10166
        Tel: (212) 294-6700
        Fax: (212) 294-4700

        *Proposed Counsel to the Debtors and Debtors
        in Possession*

---

[5] As used herein, Interim Order means that certain proposed *Interim Order: (I) Authorizing Debtors to Obtain Secured Post-Petition Financing and Use Cash Collateral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief*, originally filed as Exhibit A to the DIP Motion, as modified by the Court on the record at the May 9 Hearing, and as may be amended, modified or supplemented in accordance with the terms thereof.