## EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RELATIVITY MEDIA, LLC, *et al.*,[1] | Case No. 18-11358 (MEW) |
| Debtors. | (Jointly Administered) |

### SUPPLEMENTAL DECLARATION IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO OBTAIN TAIL INSURANCE TO CONTINUE PREPETITION INSURANCE COVERAGE AND PAY OBLIGATIONS RELATING THERETO

I, Colin M. Adams, hereby declare under penalty of perjury as follows:

1.    I am the Chief Restructuring Officer ("**CRO**") of the above-captioned debtors and debtors-in-possession (the "Debtors"), and I submit this supplemental declaration in support of *Debtors' Motion for an Order Authorizing the Debtors to Obtain Tail Insurance to Continue Prepetition Insurance Coverage and Pay Obligations Relating Thereto* (the "**Motion**").[2]

2.    I was appointed as CRO of the Debtors on April 9, 2018 and, as part of my commitment to serving as CRO, I required D&O insurance that provides acceptable coverage for me in my capacity as CRO.  In addition, in my experience, it is reasonable and customary for distressed companies to provide D&O insurance covering its directors, officers and employees. The D&O Tail Policies will provide that coverage.

3.    Upon emergence from their prior chapter 11 cases in April 2016, the Debtors obtained a $5 million directors and officers liability policy with a policy period of April 14, 2016

---

[1]  Each of the Debtors in the above-captioned jointly administered chapter 11 cases and their respective tax identification numbers are set forth (a) in the *Order (A) Authorizing the Joint Administration of their Chapter 11 Cases and (B) Waiving Requirements of Section 342(C)(1) of the Bankruptcy Code and Bankruptcy Rule 2002(n)* [Docket No. 5] and (b) at https://cases.primeclerk.com/relativity.  The location of Relativity Media, LLC's corporate headquarters and the Debtors' service address is: 9242 Beverly Blvd #300, Beverly Hills, CA 90210.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

to April 14, 2017 from Great American Insurance Company (the "**Great American Policy**"). The

Great American Policy was extended to August 24, 2017.  In addition, the Debtors obtained an

endorsement providing an additional one year discovery period under the Great American Policy,

meaning that any claim first made between August 24, 2017 and August 24, 2018 would be

covered under the Great American Policy, but only with respect to claims arising between April

14, 2016 and August 27, 2017.  A copy of the Great American Policy and the one year endorsement

are attached hereto as **Exhibit A**.

4.      For claims arising from August 24, 2017 to August 24, 2018, the Debtors obtained

new directors and officers liability insurance policies (the "**D&O Policies**"):

| Type of Coverage | Insurance Carrier | Policy Number | Duration | Annual Premium | Description of Payment | Next Payment Date |
|---|---|---|---|---|---|---|
| D&O | XL Specialty Insurance Company | ELU15168617 | 8/24/2017 to 8/24/2018 | $199,750 | Paid in Full | 8/24/18 |
| D&O | Argonaut Insurance Company | MLX 7602807-00 | 8/24/2017 to 8/24/2018 | $115,855 | Paid in Full | 8/24/18 |

5.      The D&O Policies, which expire on August 24, 2018, cover Relativity Holdings

LLC ("**Holdings**") and Holdings' present and former directors, officers and employees.  Unlike

the majority of directors and officers liability insurance policies, the D&O Policies contain an

exclusion for prior alleged wrongful acts. Thus, the D&O Policies provide coverage for claims

made during the policy period of August 24, 2017 to August 24, 2018, but not for alleged wrongful

act occurring outside the policy period.  Copies of the D&O Policies are attached to this

Declaration as **Exhibit B** and **Exhibit C**.

6.      Through the *Motion for an Order (A) Authorizing, But Not Directing, the Debtors*

*to Continue Prepetition Insurance Coverage and Pay Prepetition Obligations Relating Thereto*

*and (B) Authorizing, But Not Directing, All Financial Institutions to Honor All Related Payment*

2

*Requests* [Docket No. 15] (the "**Insurance Motion**"), the Debtors sought authority to continue the

D&O Policies.

7.      If granted, the relief requested in the Insurance Motion will allow the Debtors to

maintain the D&O Policies during the pendency of these chapter 11 cases.  That relief will not,

however, cover any claims arising during the D&O Policy coverage period that are first made after

the Debtors emerge from these chapter 11 cases.

8.      D&O insurance coverage including, without limitation, the D&O Tail Policies are

a condition to my engagement in these chapter 11 cases.  The proposed endorsement for the D&O

Tail Polices is attached to this Declaration as **Exhibit D**.

9.      However, like most directors and officers liability insurance policies, the D&O

Policies consider bankruptcy emergence to be a "change of control" that would terminate

coverage.  Without the D&O Tail Policies, the Debtors would have no coverage for claims made

after the Debtors' emergence from these chapter 11 cases for actions that occur *prior* to the

Debtors' emergence.  The D&O Tail Policies provide coverage for exactly those claims; claims

relating to actions during the coverage period under D&O Policies that are first raised after

emergence.

10.      Neither the D&O Policies nor the proposed D&O Tail Policies contain any

distinction between defense costs and claims; the policies would all be available to cover both

defense costs and claims up to their full policy limits.

11.      The D&O Tail Policies do not contemplate any change to the coverage under the

existing D&O Policies:  all of the Debtors' current and former employees, officers and directors

(in their  capacity as such) are covered.  Former employees, officers and directors will be covered

under the terms of the D&O Tail Policies for acts occurring while they were employees, officers

or directors of the Debtors from August 24, 2017 until emergence from these chapter 11 cases.

12.     Given my concerns about the high cost of the D&O Policies - a $371,000 annual

premium and an initial quote of $742,000 for run-off/tail insurance - I explored several options to

maintain acceptable coverage for the Debtors and their present employees, including a policy that

would exclude certain named individuals.

13.     In discussions with the Debtors' broker, I was informed that the exclusion of a

named individual would void the policy for any claims made that included that individual (even if

any such claims also named the Debtors' present directors, officers or employees).  Accordingly,

I do not believe that such an exclusion is a viable solution for protecting the Debtors, myself and/or

the Debtors' employees under the facts and circumstances of these chapter 11 cases.

14.     Instead, in exercising my business judgment, I chose to purchase D&O Tail Policies

that protect the Debtors, their officers and employees and consequently the Debtors' estates (or

those standing in the shoes of the Debtors' estates) in the best way possible.  Further, I reduced the

cost of the tail/run-off insurance as much as reasonably possible by limiting the duration of the

run-off period to three years (instead of the typical six) and reducing the excess coverage from $2

million to $1 million (for $3 million in total D&O run-off coverage).

15.     Given that the carriers are not willing to guarantee an extension of the current

pricing until the second date hearing in these chapter 11 cases scheduled for May 30, 2018, I

believe requesting this relief on an expedited basis represents a prudent exercise of my business

judgment on behalf of the Debtors' estates.  The cost for the D&O Tail Policies will almost

certainly never be materially lower, and a delay in purchasing the D&O Tail Policies creates a

material risk that the cost to the Debtors' and their estates will be hundreds of thousands of dollars higher.

16.      I believe that the D&O Tail Policies are a reasonable, prudent exercise of the Debtors' business judgment under the circumstances. The Debtors' DIP lender has agreed to provide the funds necessary to purchase the policies and the policies are less expensive than the alternative if the Debtors were not to act now.   I believe that the D&O Tail Policies provide reasonable, necessary coverage and protection for myself, the Debtors and their employees. Moreover, after diligent enquiry and research, I believe that this coverage is being provided at a reasonable cost to the estate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:    May 16, 2018
       New York, New York    Colin M. Adams
                             Chief Restructuring Officer

## **EXHIBIT A**



**GREAT AMERICAN**®
INSURANCE GROUP

**Executive Liability Division**
1515 Woodfield Road, Suite 500
Schaumburg, IL 60173-5437
Fax (513) 929-6890

May 6, 2016

MS CHELSEA LAING
ARTHUR J. GALLAGHER RISK MGMT SERV.
505 NORTH BRAND BOULEVARD, SUITE 600
GLENDALE, CA 91203-3944

RE:    RELATIVITY HOLDINGS, LLC
       Policy No.:            DOL1346214
       Policy Period: 4/14/2016 - 4/14/2017

Dear MS LAING:

Enclosed please find the original policy for the above mentioned Insured.  Thank you for choosing the Executive Liability Division for your client's insurance needs.  We appreciate your efforts in securing this placement and look forward to working with you again in the future.

Should you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

Jason R. Zakrzewski
Master Financial Products Underwriter
(818) 382-1177
jzakrzewski@gaig.com

Great American Insurance Company • Agricultural Insurance Company • Agricultural Excess and Surplus Insurance Company • American Alliance Insurance Company• American Dynasty Surplus Lines Insurance Company • American National Fire Insurance Company • American Spirit Insurance Company • Eagle American Insurance Company • Eden Park Insurance Company • Great American Lloyd's Insurance Company • Great Texas County Mutual Insurance Company • Seven Hills Insurance Company.

**MEMBERS OF AMERICAN FINANCIAL GROUP**                     A13002



*ExecPro*

# DECLARATIONS

for

Directors', Officers', Insured Entity and
Employment Practices Liability Insurance

Insurance is afforded by the company indicated below:  (Each a capital stock corporation)

☒ Great American Insurance Company        ☐ Great American E&S Insurance Company

☐ Other

Note:  The Insurance Company selected above shall herein be referred to as the **Insurer**.

Policy Number: DOL1346214            Policy Form Number:  D2100

Note:  This is a  claims made policy, please read it carefully.  Amounts incurred as **Costs of Defense** shall  reduce the Limit of Liability available to pay judgments or settlements and shall also be applied against the retention.  This Policy does not provide for any duty by the **Insurer** to defend those insured under the Policy.

Item 1.  **Corporation**:            RELATIVITY HOLDINGS, LLC

    Mailing Address:        9242 BEVERLY BLVD., SUITE 300
                                                BEVERLY HILLS, CA 90210

    Attention:

Item 2.  **Policy Period**:        From:        4/14/2016        To:        4/14/2017
                                      *(Month, Day, Year)*               *(Month, Day, Year)*
                    (Both dates at 12:01 a.m. Standard Time at the address of the **Corporation** as stated in Item 1)

Item 3.  Limit of Liability (Inclusive of **Costs of Defense**):

        $5,000,000            Aggregate Limit of Liability for the **Policy Period**

Item 4.  Retentions:
    Insuring Agreement A:

        Each **Claim**:                                    $0

    Insuring Agreements B and/or C:

        Each **Claim** other than a **Securities Claim** or **Employment Practices Claim**:    $50,000
        Each **Employment Practices Claim**:                    $100,000
        Each **Securities Claim**:                        $50,000

Item 5.  Premium: (Prepaid)                            $51,511

Item 6.  Endorsements Attached

| D2400 (1) | D2500 | D2703 | D2704 (16) | D2704 (50) | D2705 (10) | D2705 (26) | D2706 | D2706 (15) | D2706 (23) |
|---|---|---|---|---|---|---|---|---|---|
| D2709 (5) | D2710 | D2710 (9) | D2711 (11) | D2712 | D2712 (31) | D2712 (37) | D2712(145) | D2712(149) | D2712(150) |
| D2712 (172) | D2713 | D2713 (48) | D2713 | D2714 | D2727 | DTCOV | IL7324 | | |

Item 7.  Prior and Pending Date  4/14/2016

Item 8.  Notices:  **Notice of Claim** shall be addressed to:            All other notice shall be addressed to:
               Great American Insurance Companies,            Great American Insurance Companies,
               Executive Liability Division, Claims Department,        Executive Liability Division,
               P.O. Box 66943, Chicago, Illinois 60666            P.O. Box 66943, Chicago, Illinois 60666

These Declarations, along with the completed and signed Proposal Form and the ***Directors', Officers', Insured Entity and Employment Practices Liability Insurance Policy***, shall constitute the contract between the **Insured** and the **Insurer**.

**Countersignature**
**Not Required**

        (Authorized Representative)                        (Countersignature Date)



*ExecPro*®

Management and Corporate Liability Protection

# *ExecPro* ®

### Directors', Officers', Insured Entity and
### Employment Practices Liability Insurance Policy

Great American Insurance Company - Executive Liability Division:
1515 Woodfield Road, Suite 500, Schaumburg, IL 60173

# Table of Contents

I.      Insuring Agreements.................................................................... Page 1

II.     Discovery Period.......................................................................... Page 1

III.    Definitions.................................................................................... Page 2

IV.     Exclusions.................................................................................... Page 4

V.      Limit of Liability............................................................................Page 5

VI.     Retention...................................................................................... Page 6

VII.    Costs of Defense and Settlements................................................Page 6

VIII.   Notice of Claim............................................................................ Page 7

IX.     General Conditions......................................................................Page 8

        (A)   Cancellation or Non-Renewal............................................ Page 8

        (B)   Proposal Form................................................................... Page 8

        (C)   Action Against the Insurer................................................. Page 8

        (D)   Merger or Acquisition........................................................ Page 8

        (E)   Conversion to Run-Off Coverage...................................... Page 9

        (F)   Outside Entity Provision.................................................... Page 9

        (G)   Coverage Extensions........................................................ Page 9

        (H)   Subrogation....................................................................... Page 9

        (I)    Arbitration.......................................................................... Page 9

        (J)    Assignment........................................................................ Page 10

        (K)   Conformity to Statute......................................................... Page 10

        (L)   Entire Agreement.............................................................. Page 10

        (M)   Corporation Represents Insured........................................Page 10

        (N)   Representative of the Insurer............................................. Page 10

GREAT AMERICAN INSURANCE COMPANIES®
Headquarters: 301 E. Fourth Street, Cincinnati, Ohio 45202

## THIS IS A CLAIMS MADE POLICY.  READ IT CAREFULLY.

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the insurance company shown in the Declarations (a stock insurance company, hereinafter called the **Insurer**), including the statements made in the Proposal Form and subject to all terms, conditions and limitations of this Policy, the **Insured** and **Insurer** agree:

## Section I. Insuring Agreements

**A.**    The **Insurer** shall pay on behalf of the **Insured Persons** all **Loss** which the **Insured Persons** shall be legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim** or a **Securities Claim**) first made against the **Insured Persons** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**, except for any **Loss** which the **Company** actually pays as indemnification.

**B.**    The **Insurer** shall pay on behalf of the **Company** all **Loss** which the **Insured Persons** shall be  legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim** or a **Securities Claim**) first made against the **Insured Persons** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**, but only to the extent the **Company** is required or permitted by law to indemnify the **Insured Persons**.

**C.**    The **Insurer** shall pay on behalf of the **Insured Entity** all **Loss** which the **Insured Entity** shall be legally obligated to pay as a result of a **Securities Claim** first made against the **Insured Entity** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**.

## Section II. Discovery Period

**A.**    In the event the Insurer refuses to renew this Policy or the Corporation chooses to cancel or not renew this Policy, the Corporation shall have the right, upon payment of fifty percent (50%) of the annual premium, (or if the Policy Period is other than annual, fifty percent (50%) of the annualized premium), to an extension of the coverage provided by this Policy with respect to any Claim first made against any Insured during the period of twelve (12) months after the end of the Policy Period, but only with respect to any Wrongful Act committed or alleged to have been committed before the end of the Policy Period. This twelve (12) month period shall be referred to in this Policy as the Discovery Period.

**B.**    As a condition precedent to the right to purchase the **Discovery Period**, the total premium for this Policy must have been paid, and a written request together with payment of the appropriate premium for the **Discovery Period** must be provided to the **Insurer** no later than thirty (30) days after the end of the **Policy Period.**

**C.**    The fact that the coverage provided by this Policy may be extended by virtue of the purchase of the **Discovery Period** shall not in any way increase the Limit of Liability stated in Item 3 of the Declarations.  For purposes of the Limit of Liability, the **Discovery Period** is considered to be part of, and not in addition to, the **Policy Period**.

**Section III. Definitions**

**A.** **"Claim"** shall mean:

    (1) a written demand for monetary or non-monetary relief made against any **Insured** and reported to the **Insurer** pursuant to Section VIII.A.(1); or

    (2) a civil, criminal, administrative or arbitration proceeding made against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment, or the receipt or filing of notice of charges or similar document, including any proceeding initiated against any **Insured** before the Equal Employment Opportunity Commission or any similar governmental body.

**B.** "**Company**" shall mean the **Corporation** and any **Subsidiary**.

**C.** "**Corporation**" shall mean the entity named in Item 1 of the Declarations.

**D.** "**Costs of Defense**" shall mean reasonable and necessary legal fees, costs and expenses incurred in the investigation, defense or appeal of any **Claim** including the costs of an appeal bond, attachment bond or similar bond (but without obligation on the part of the **Insurer** to apply for or furnish such bonds); provided, however, **Costs of Defense** shall not include salaries, wages, overhead or benefit expenses associated with any **Insured Persons**.

**E.** "**Directors**" and "**Officers**" shall mean all persons who were, now are, or shall be directors and/or officers of the **Company**.

**F.** "**Employment Practices Claim**" shall mean any **Claim** brought by or on behalf of any past, present or future employee of the **Company** or **Outside Entity**, or any applicant for employment with the **Company** or **Outside Entity** alleging an **Employment Practices Wrongful Act**.

**G.** "**Employment Practices Wrongful Act**" shall mean a **Wrongful Act** related to employment including but not limited to:

    (1) wrongful dismissal, discharge or termination of employment, whether actual or constructive;

    (2) employment related misrepresentation;

    (3) sexual or workplace harassment of any kind;

    (4) discrimination;

    (5) wrongful failure to employ or promote;

    (6) wrongful discipline;

    (7) wrongful deprivation of career opportunity, including defamatory statements made in connection with an employee reference;

    (8) failure to grant tenure;

    (9) negligent evaluation;

    (10) failure to provide adequate workplace or employment policies and procedures;

    (11) wrongful retaliation; or

    (12) employment related libel, slander, defamation, or invasion of privacy.

**H.** "**Financial Insolvency**" shall mean the **Company** becoming a debtor in possession, or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Company**.

**I.** "**Insured(s)**" shall mean the **Insured Entity** and all **Insured Persons**.

**J.**  "**Insured Entity**" shall mean the **Company**, but only with respect to coverage provided under Insuring Agreement I.C.

**K.**  "**Insured Persons**" shall mean **Directors** and **Officers** and all past, present and future employees of the **Company** other than **Directors** and **Officers**.

**L.**  "**Loss**" shall mean compensatory damages, punitive or exemplary damages, the multiple portion of any multiplied damage award, settlements and **Costs of Defense**, provided, however, **Loss** shall not include criminal or civil fines or penalties imposed by law, taxes, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed. It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award. **Loss** shall also not include any portion of damages, judgments or settlements arising out of any **Claim** alleging that the **Company** paid an inadequate price or consideration for the purchase of the **Company's** securities.

**M.**  "**Outside Entity**" shall mean any not for profit entity classified under Section 501(c)(3) of the Internal Revenue Code of 1986 and any amendments thereto.

**N.**  "**Policy Period**" shall mean the period from the inception date of this Policy to the expiration date of this Policy as set forth in Item 2 of the Declarations, or its earlier termination if applicable.

**O.**  "**Related Wrongful Acts**" shall mean **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision.

**P.**  "**Securities Claim**" shall mean any **Claim** (including a civil lawsuit or criminal proceeding brought by the Securities and Exchange Commission) made against an **Insured** alleging a violation of any law, regulation or rule, whether statutory or common law, which is:

(1)  brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the: (a) purchase or sale of, or (b) offer or solicitation of an offer to purchase or sell, any securities of the **Company**, or

(2)  brought by a security holder of the **Company**, arising solely with respect to such security holder's interest in such securities of the **Company**, whether directly, by class action, or derivatively on behalf of the **Company**.

**Q.**  "**Subsidiary**" shall mean any entity in which the **Corporation** owns, directly or indirectly, more than fifty percent (50%) of the voting stock:

(1)  on or before the inception date of this Policy;

(2)  subsequent to the inception date of this Policy by reason of being created or acquired by the **Company** after such date, if the entity's total assets do not  exceed twenty-five percent (25%) of the total consolidated assets of the **Corporation** as of the inception date of this Policy; or

(3)  subsequent to the inception date of this Policy by reason of being created or acquired by the **Company** other than as described in (2) above, if the **Corporation**, within ninety (90) days, provides the **Insurer** with written notice thereof and agrees to any premium adjustment and/or coverage revision that may be required by the **Insurer**.

**R.**  "**Wrongful Act**" shall mean:

(1)  any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty, or **Employment Practices Wrongful Act**, by any **Insured Persons** in their capacity with the **Company**;

(2)  any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the **Insured Entity**, but only with respect to Insuring Agreement I.C.;

(3) any matter claimed against any **Insured Persons** solely by reason of their status with the **Company**; or

(4) any matter claimed against any **Insured Persons** arising out of their service as a director, officer, trustee or governor of an **Outside Entity**, but only if such service is at the request of the **Company**.

## Section IV. Exclusions

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

**A.**    brought about or contributed to by:

(1) any **Insureds** gaining any profit, advantage or remuneration to which they were not legally entitled; or

(2) the deliberately fraudulent or criminal acts of any **Insureds**;

provided, however, this exclusion shall only apply if it is finally adjudicated that such conduct in fact occurred; and this exclusion shall not apply to coverage provided under Insuring Agreement I.B.;

**B.**    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice or **Claim** given under any other policy of which this Policy is a renewal or replacement;

**C.**    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any prior and/or pending civil, criminal, administrative or investigative proceeding involving the **Company** and/or any **Insured Persons** as of the date stated in Item 7 of the Declarations, or any fact, circumstance or situation underlying or alleged in such proceeding;

**D.**    for any actual or alleged:

(1) bodily injury, sickness, disease, or death of any person;

(2) damage to or destruction of any tangible property, including the loss of use thereof; or

(3) mental anguish, emotional distress, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, libel or slander;

provided, however, part (3) of this exclusion shall not apply to any **Employment Practices Claim**;

**E.**    for any **Wrongful Act** of any **Insureds** in connection with any pension or welfare plans of the **Company**;

**F.**    for any **Wrongful Act** of any **Insured Persons** serving as a director, officer, trustee or governor of any entity other than the **Company** or an **Outside Entity**, even if directed or requested to serve as a director, officer, trustee or governor of such entity;

**G.**    for any **Wrongful Act** of any **Insured Persons** serving as a director, officer, trustee or governor of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any director, officer, trustee or governor thereof; provided, however, this exclusion shall not apply to any **Employment Practices Claim**;

H.    by or on behalf of the **Company**, or any security holder of the **Company**, or any **Directors** or **Officers**, provided, however, this exclusion shall not apply to:

(1)    any **Employment Practices Claim**;

(2)    any **Claim** brought by any **Directors** or **Officers** where such **Claim** is in the form of a cross-claim or third party claim for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded by the terms of this Policy; or

(3)    any **Claim** brought by any security holder of the **Company** whether directly or derivatively, if the security holder bringing such **Claim** is acting totally independent of, and without the solicitation, assistance, active participation or intervention of any **Director** or **Officer** or the **Company**;

I.    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving actual or alleged seepage, pollution, radiation, emission or contamination of any kind; provided, however, that this exclusion shall not apply to any derivative suit by a security holder of the **Company** if the security holder bringing such **Claim** is acting totally independent of, and without the solicitation, assistance, active participation or intervention of any **Director** or **Officer** or the **Company**;

J.    for any **Wrongful Act** of any **Subsidiary** or the **Insured Persons** of such **Subsidiary** or any entity that merges with the **Company** or the **Insured Persons** of such entity that merges with the **Company** occurring:

(1)    prior to the date such entity became a **Subsidiary** or was merged with the **Company**;

(2)    subsequent to the date such entity became a **Subsidiary** or was merged with the **Company** which, together with a **Wrongful Act** occurring prior to the date such entity became a **Subsidiary** or was merged with the **Company**, would constitute **Related Wrongful Acts**; or

(3)    subsequent to the date the **Corporation** ceased to own, directly or indirectly, more than fifty percent (50%) of the voting stock of such **Subsidiary**;

K.    which is insured in whole or in part by another valid policy or policies, (except with respect to any excess beyond the amount or amounts of coverage under such other policy or policies), whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise.

NOTE:  For the purpose of determining the applicability of the aforementioned Exclusion A., it is understood and agreed that:

(1)    the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person**; and

(2)    only the **Wrongful Acts** of any past, present or future chairman of the board, president, chief executive officer, chief operating officer or chief financial officer of the **Company** shall be imputed to the **Insured Entity**.

## Section V. Limit of Liability

A.    The **Insurer** shall be liable to pay one hundred percent (100%) of **Loss** in excess of the applicable Retention amount stated in Item 4 of the Declarations up to the Limit of Liability stated in Item 3 of the Declarations.

B.    **Costs of Defense** shall be part of, and not in addition to, the Limit of Liability stated in Item 3 of the Declarations, and such **Costs of Defense** shall serve to reduce the Limit of Liability.

C.    The **Insurer's** liability for all **Loss** shall be the amount shown in Item 3 of the Declarations which shall be the maximum aggregate Limit of Liability of the **Insurer** for the **Policy Period**, regardless of the time of payment or the number of **Claims**.

## Section VI. Retention

**A.**     One Retention shall apply to each and every **Claim**. The **Company** shall be responsible for, and shall hold the **Insurer** harmless from, any amount within the Retention. For the purposes of the application of the Retention, **Loss** applicable to Insuring Agreement I.B. includes that for which indemnification is legally permissible, whether or not actual indemnification is granted. In the event the **Company** is unable to indemnify the **Insured Persons** solely by reason of its **Financial Insolvency**, the **Insurer** shall, pursuant to the terms and conditions of Section VII.E., advance **Costs of Defense** incurred by the **Insured Persons** without first requiring payment of the Retention applicable to **Claims** covered by Insuring Agreement I.B. The certificate of incorporation, charter or other organizational documents of the **Company**, including by-laws and resolutions, shall be deemed to require indemnification and advancement of **Loss** to the **Insured Persons** to the fullest extent permitted by law.

**B.**     More than one **Claim** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** shall be considered a single **Claim**, and only one Retention shall be applicable to such single **Claim**. All such **Claims** constituting a single **Claim** shall be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage.

**C.**     With respect solely to any **Securities Claim**, the Retention shall apply only to **Costs of Defense**. The Retention shall be waived for any **Securities Claim** and the **Insurer** shall reimburse such **Costs of Defense** paid by the **Insured** if:

    (1)   an adjudication with or without prejudice is obtained pursuant to a trial, motion to dismiss or motion for summary judgment in such **Claim**, or

    (2)   a complete and final settlement of such **Claim** with prejudice,

establishes that no **Insured** is liable for any **Loss** other than **Costs of Defense**; provided, however, subject to a written undertaking by the **Company** in a form acceptable to the **Insurer**, any **Costs of Defense** advanced by virtue of a waiver of the Retention shall be paid back by the **Company** to the **Insurer** in the event the **Securities Claim** is re-brought or any **Claim** is brought which is subject to the same Retention pursuant to Section VI.B.

## Section VII. Costs of Defense and Settlements

**A.**     The **Insureds** shall not incur **Costs of Defense**, or admit liability, offer to settle, or agree to any settlement in connection with any **Claim** without the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld. The **Insureds** shall provide the **Insurer** with all information and particulars it may reasonably request in order to reach a decision as to such consent. Any **Loss** resulting from any admission of liability, agreement to settle, or **Costs of Defense** incurred prior to the **Insurer's** consent shall not be covered hereunder.

**B.**     The **Insureds**, and not the **Insurer**, have the duty to defend all **Claims**, provided that the **Insureds** shall only retain counsel as is mutually agreed upon with the **Insurer**.

**C.**     The **Insurer** shall at all times have the right, but not the duty, to associate with the **Insureds** in the investigation, defense or settlement of any **Claim** to which coverage under this Policy may apply.

**D.**     If a **Claim** made against any **Insured** includes both covered and uncovered matters, or is made against any **Insured** and others, the **Insured** and the **Insurer** recognize that there must be an allocation between insured and uninsured **Loss**. The **Insureds** and the **Insurer** shall use their best efforts to agree upon a fair and proper allocation between insured and uninsured **Loss**.

E.   The **Insurer** shall advance **Costs of Defense** prior to the final disposition of any **Claim**, provided such **Claim** is covered by this Policy.  Any advancement shall be on the condition that:

   (1)   the appropriate Retention has been satisfied, provided, however, this condition shall not apply in the event of the **Financial Insolvency** of the **Company**;

   (2)   any amounts advanced by the **Insurer** shall serve to reduce the Limit of Liability stated in Item 3 of the Declarations to the extent they are not in fact repaid;

   (3)   the **Company** and **Insured Persons** and the **Insurer** have agreed upon the portion of the **Costs of Defense** attributable to covered **Claims** against the **Insureds**; and

   (4)   in the event it is finally established that the **Insurer** has no liability under the Policy for such **Claim**, the **Company** and **Insured Persons** will repay the **Insurer** upon demand all **Costs of Defense** advanced by virtue of this provision.


## Section VIII. Notice of Claim

A.   The **Insureds** shall, as a condition precedent to their rights under this Policy, give the **Insurer** notice in writing of any **Claim**:

   (1)   as defined in Section III.A. (1) which is made during the **Policy Period**.  Such notice shall be given prior to the end of the **Policy Period**;

   (2)   as defined in Section III.A.(2) which is made during the **Policy Period**.  Such notice shall be given as soon as practicable, but in no event later than ninety (90) days after the end of the **Policy Period**.

   The **Insureds** failure to report a **Claim** pursuant to (1) above shall not negate the right to report a **Claim** pursuant to (2) above under this Policy or any renewal thereof.

B.   If, during the **Policy Period** or **Discovery Period**, any **Insured** first becomes aware of a specific **Wrongful Act** and gives notice to the **Insurer** of:

   (1)   the specific **Wrongful Act**;

   (2)   the injury or damage which has or may result therefrom; and

   (3)   the circumstances by which the **Insured** first became aware thereof;

   then any **Claim** arising out of such **Wrongful Act** which is subsequently made against the **Insured** shall be deemed to have been made at the time the **Insurer** received such written notice from the **Insured**.

C.   In addition to furnishing the notice as provided in Sections VIII.A. or B. the **Insureds** shall, as soon as practicable, furnish the **Insurer** with copies of reports, investigations, pleadings and other papers in connection therewith.

D.   Notice to the **Insurer** as provided in Sections VIII.A. or B. shall be given to:

   **GREAT AMERICAN INSURANCE COMPANIES**
   **EXECUTIVE LIABILITY DIVISION**
   **CLAIMS DEPARTMENT**
   **P.O. BOX 66943 CHICAGO, IL 60666**.

## Section IX. General Conditions

**A.    Cancellation or Non-Renewal**

    (1)    This Policy may be canceled by the Corporation at any time by written notice to the Insurer. Upon cancellation, the Insurer shall retain the customary short rate portion of the premium, unless this Policy is converted to Run-Off pursuant to Section IX. E. wherein the entire premium for this Policy shall be deemed earned.

    (2)    This Policy may only be canceled by the **Insurer** if the **Corporation** does not pay the premium when due.

    (3)    If the **Insurer** elects not to renew this Policy, the **Insurer** shall provide the **Corporation** with no less than sixty (60) days advance notice thereof.

**B.    Proposal Form**

It is agreed by the **Company** and the **Insured Persons** that the particulars and statements contained in the Proposal Forms and any information provided therewith (which shall be on file with the **Insurer** and be deemed attached hereto as if physically attached hereto) are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the **Company** and the **Directors** and **Officers** that the statements in the Proposal Forms or in any information provided therewith are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations; provided, however, that except for material facts or circumstances known to the person(s) who subscribed the Proposal Forms, any misstatement or omission in such Proposal Forms or information provided therewith in respect of a specific **Wrongful Act** by a particular **Director** or **Officer** or his cognizance of any matter which he has reason to suppose might afford grounds for a future **Claim** against him shall not be imputed to any other **Director** or **Officer** for purposes of determining the validity of this Policy as to such other **Director** or **Officer**.

**C.    Action Against the Insurer**

    (1)    No action shall be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, and until the **Insured's** obligation to pay shall have been finally determined by an adjudication against the **Insured** or by written agreement of the **Insured**, claimant and the **Insurer**.

    (2)    No person or organization shall have any right under this Policy to join the **Insurer** as a party to any **Claim** against the **Insureds** nor shall the **Insurer** be impleaded by any **Insured** or their legal representative in any such **Claim**.

**D.    Merger or Acquisition**

If, during the **Policy Period**, the **Company** acquires the assets of another entity, by merger or otherwise, and the acquired assets of such other entity exceed twenty-five percent (25%) of the assets of the **Company** as of the inception date of the Policy, written notice thereof shall be given to the **Insurer** as soon as practicable, but in no event later than ninety (90) days from the effective date of the transaction, together with such information as the **Insurer** may request.  Premium adjustment and coverage revisions shall be effected as may be required by the **Insurer**.

**E.      Conversion to Run-Off Coverage**

If, during the **Policy Period**, a transaction occurs wherein another entity gains control of the **Corporation** through the ownership of more than fifty percent (50%) of the voting stock of the **Corporation**, or the **Corporation** merges into another entity or consolidates with another entity such that the **Corporation** is not the surviving entity, then:

(1)   the **Corporation** must give written notice of such transaction to the **Insurer** within ninety (90) days after the effective date of such transaction and provide the **Insurer** with such information in connection therewith as the **Insurer** may deem necessary;

(2)   this Policy shall only apply to **Wrongful Acts** actually or allegedly committed on or before the effective date of such transaction; and

(3)   the entire premium for this Policy shall be deemed earned as of the date of such transaction.

**F.      Outside Entity Provision**

In the event a **Claim** is made against any **Insured Persons** arising out of their service as a director, officer, trustee or governor of an **Outside Entity**, coverage as may be afforded under this Policy shall be excess of any indemnification provided by the **Outside Entity** and any insurance provided to the **Outside Entity** which covers its directors, officers, trustees or governors.

**G.      Coverage Extensions**

(1)   Spousal Provision
The coverage provided by this Policy shall also apply to the lawful spouse of an **Insured Person**, but only for **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Insured Person**.

(2)   Worldwide Provision
The coverage provided under this Policy shall apply worldwide.  The term **Directors** and **Officers** is deemed to include individuals who serve in equivalent positions in foreign **Subsidiaries**.

(3)   Estates and Legal Representatives
The coverage provided by this Policy shall also apply to the estates, heirs, legal representatives or assigns of any **Insured Persons** in the event of their death, incapacity or bankruptcy, but only for **Claims** arising out of any actual or alleged **Wrongful Acts** of any **Insured Persons**.

**H.      Subrogation**

In the event of any payment under this Policy, the **Insurer** shall be subrogated to all of the **Insureds**' rights of recovery and the **Company** and **Insured Persons** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents as may be necessary to enable the **Insurer** to effectively bring suit in the name of any **Insured Persons** or the **Company**.

**I.      Arbitration**

It is agreed that any disputes or disagreements which arise in connection with this Policy and cannot be resolved through negotiation shall be resolved through final and binding arbitration. The dispute shall be submitted to the American Arbitration Association for resolution pursuant to its then prevailing commercial arbitration procedures.   The panel shall consist of one arbitrator selected by the **Corporation**, one arbitrator selected by the **Insurer** and a third independent arbitrator selected by the first two arbitrators. Each party will bear its own legal fees and expenses. The costs and expenses of the arbitration procedure shall be split equally by the parties.

**J.    Assignment**

Assignment of interest under this Policy shall not bind the **Insurer** until its consent is endorsed hereon.

**K.    Conformity to Statute**

Any terms of this Policy which are in conflict with the terms of any applicable laws are hereby amended to conform to such laws.

**L.    Entire Agreement**

By acceptance of this Policy, the **Insureds** and the **Insurer** agree that this Policy (including the Declarations, Proposal Forms submitted to the **Insurer** and any information provided therewith) and any written endorsements attached hereto constitute the entire agreement between the parties.  The terms, conditions and limitations of this Policy can be waived or changed only by written endorsement.

**M.    Corporation Represents Insured**

By acceptance of this Policy, the **Corporation** shall be designated to act on behalf of the **Insureds** for all purposes including, but not limited to, the giving and receiving of all notices and correspondence, the cancellation or non-renewal of this Policy, the payment of premiums, and the receipt of any return premiums that may be due under this Policy.

**N.    Representative of the Insurer**

Great American Insurance Companies, Executive Liability Division, P.O. Box 66943, Chicago, Illinois 60666 shall act on behalf of the **Insurer** for all purposes including, but not limited to, the giving and receiving of all notices and correspondence, provided, however, notice of **Claims** shall be given pursuant to Section VIII. of the Policy.

In witness whereof the **Insurer** has caused this Policy to be signed by its President and Secretary and countersigned, if required, on the Declarations page by a duly authorized agent of the **Insurer**.

**GREAT AMERICAN INSURANCE COMPANIES®**

_Secretary_                    _President_





*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## AMENDMENT TO DECLARATIONS PAGE

It is understood and agreed that Item <u>4</u> of the Declarations is hereby amended to read as follows:

Item <u>4</u>.  Retentions:
      Insuring Agreement A:

             Each **Claim**:                                      NONE

      Insuring Agreements B and/or C:

             Each **Claim** other than a **Securities Claim** or
             **Employment Practices Claim**:        $ <u>  50,000  </u>

             Each **Employment Practices Claim**:    $ <u>100,000  </u>

             Each **Securities Claim**:            $ <u>  50,000  </u>

             Each **Third Party Claim**:          $ <u>100,000  </u>

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms,
conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:   4/14/2016 to Policy Expiration        Policy Number:  DOL1346214

Countersigned by: _____       Endorsement Effective Date:   4/14/2016
                *Authorized Representative*





*ExecPro*

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## PAST ACTS EXCLUSION

It is understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act(s)** which occurred on or before ____4/14/2016____ .

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:   4/14/2016 to Policy Expiration

Policy Number:  DOL1346214

Countersigned by: _____
                    *Authorized Representative*

Endorsement Effective Date:   4/14/2016

D 2500     (01/99)

Endorsement:   2

Page 1 of 1



*ExecPro*

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

# ADDITION TO SECTION III.
# DEFINITIONS

It is understood and agreed that Section III. of the Policy is hereby amended by the addition of the
following:

Section III.   S

"**Employed Lawyer Legal Services Wrongful Act**" shall mean any act, omission, error, misstatement,
misleading statement, neglect or breach of duty in connection with legal services provided by any **Insured
Person** as a lawyer, but only if such services are performed for the **Company** and in the **Insured Person's**
capacity as an employee of the **Company**.  **Employed Lawyer Legal Services Wrongful Act** shall not
include any act, omission, error, misstatement, misleading statement, neglect or breach of duty in
connection with any legal services provided by such **Insured Person** for others for a fee.

Section III.R.(1) of the Policy is deleted and replaced with the following:

(1)       any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of
duty, **Employment Practices Wrongful Act**, or **Employed Lawyer Legal Services Wrongful Act**, by
any **Insured Persons** in their capacity with the **Company**;

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms,
conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                Policy Number:  DOL1346214

Countersigned by:  _____               Endorsement Effective Date:  4/14/2016
                            *Authorized Representative*





**ExecPro**

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## AMENDMENT TO SECTION III.
## DEFINITIONS

It is understood and agreed that Section III.  P.  of the Policy is hereby deleted and replaced with the following:

Section III.  P .

"**Securities Claim**" shall mean any **Claim** (including a civil lawsuit or criminal proceeding brought by the Securities and Exchange Commission) made against an **Insured** alleging a violation of any federal, state, local or foreign securities law, regulation, or rule, whether statutory or common law, which is:

(1) brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the: (a) purchase or sale of, or (b) offer or solicitation of an offer to purchase or sell, any securities of the **Company**, or

(2) brought by a security holder of the **Company**, arising solely with respect to such security holder's interest in such securities of the **Company**, whether directly, by class action, or derivatively on behalf of the **Company**.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration

Policy Number:  DOL1346214

Countersigned by: _____
                         *Authorized Representative*

Endorsement Effective Date:  4/14/2016



*ExecPro*

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## AMENDMENT TO SECTION III.
## DEFINITIONS

It is understood and agreed that Section III.A. of the Policy is deleted and replaced with the following:

**A.**   **"Claim"** shall mean:

    (1)   a written demand for monetary or non-monetary relief made against any **Insured** and reported to the **Insurer** pursuant to Section VIII.A. (1);

    (2)   a civil, criminal, administrative, arbitration or regulatory proceeding made against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment, or the receipt or filing of notice of charges or similar document, including any proceeding initiated against any **Insured** before the Equal Employment Opportunity Commission or any similar governmental body;

    (3)   a civil, criminal, administrative or regulatory investigation (including a Securities and Exchange Commission, Equal Employment Opportunity Commission and grand jury investigation) of any **Insured Person**:

        (a)   but only after such **Insured Person** is identified in writing by the investigating authority as a person against whom a proceeding described in subsection (2) above may be commenced, provided, however, **Claim** shall not include a civil, criminal, administrative or regulatory investigation of the **Company**; or

        (b)   with respect to an investigation by the Securities and Exchange Commission or a similar state or foreign government authority, only after the service of a subpoena, receipt of a Wells Notice, receipt of a target letter or receipt of a formal order of investigation upon such **Insured Person**; or

    (4)   a written request to enter into an agreement to toll or waive any applicable statute of limitation prior to the commencement of any judicial, administrative, regulatory or arbitration proceeding.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                        Policy Number:  DOL1346214

Countersigned by: _____                        Endorsement Effective Date:  4/14/2016
                   *Authorized Representative*



*ExecPro*

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

# ADDITION TO SECTION IV.
# EXCLUSIONS

It is understood and agreed that Section IV. of the Policy is hereby amended by the addition of the
following:

Section IV.   L  .

for the performance of services for others for a fee or other consideration, and caused by any act, error or
omission.

It is further understood and agreed that this exclusion only applies to any **Claim** brought by or on behalf
of any individual(s) and/or entity(ies) and/or affiliates of such individual(s) and/or entity(ies) for whom
such services were, now are or shall be performed.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms,
conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration          Policy Number:  DOL1346214

Countersigned by:  _____     Endorsement Effective Date:  4/14/2016
*Authorized Representative*



*ExecPro*

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## INSURED ENTITY EXCLUSIONS

It is understood and agreed that Section IV. of the Policy is amended by the addition of the following:

____M____ . As respects only Insuring Agreement I.C., it is understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** other than a **Securities Claim**:

(i)    based upon, arising out of, relating to, directly or indirectly resulting from on in consequence of, or in any way involving any actual or alleged breach by the **Insured Entity** of an express or implied contract or agreement; provided, however, this Exclusion shall not apply:

   1)    to the extent that the **Insured Entity** would have been liable in the absence of the contract or agreement, or

   2)    to any **Employment Practices Claims**;

(ii)    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving charges of price fixing, restraint of trade, monopolization or unfair trade, or any actual or alleged violation of the Federal Trade Commission Act, the Sherman Antitrust Act, the Clayton Act, or any other federal statutory provision involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, or any rules or regulations promulgated under or in connection with such statutes, or any similar provision or any state, federal or local statutory law or common law; or

(iii)    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged plagiarism or infringement of copyright, patent, trademark or trade name, or misappropriation of ideas or trade secrets;

---

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration          Policy Number:  DOL1346214

Countersigned by: _____          Endorsement Effective Date:  4/14/2016
          *Authorized Representative*



*ExecPro*

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## INSURED ENTITY EXCLUSIONS

 (iv) based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged defect, deficiency, inadequacy or dangerous condition of any of the **Insured Entity's** products, including warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of such products.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.





*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## AMENDMENT TO SECTION IV.
## EXCLUSIONS

It is understood and agreed that Section IV. __G__ of the Policy is hereby deleted and replaced with the following:

Section IV. __G__

for any **Wrongful Act** of any **Insured Persons** serving at the knowledge and consent of the **Company** as a director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position thereof; provided, however, this exclusion shall not apply to any **Claim** against any **Insured Person** if such **Claim**:

(1)     is brought solely and entirely in a jurisdiction other than the United States of America, its territories and possessions;

(2)     is in the event of **Financial Insolvency**;

(3)     is brought derivatively by a security holder of the **Outside Entity** if the security holder bringing such **Claim** is acting totally independent of, and without the solicitation, assistance, active participation or intervention of any **Director**, **Officer,** the **Outside Entity** or the **Company**.  It is further understood and agreed that this exclusion shall not apply to the solicitation, assistance, active participation or intervention by an **Insured Person** that has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, general counsel or risk manager (or equivalent position) or consultant for the **Outside Entity** for at least two (2) years prior to the commencement of such **Claim**;

(4)     is an **Employment Practices Claim**;

(5)     is brought against a **Director** of the **Company** solely because such **Director** also serves in a capacity as a director of any entity which is a shareholder or investor of the **Company**, provided such **Claim**, in whole or in part, is made against such **Director** for **Wrongful Acts** in an **Insured Capacity** for the **Company**.

provided, however, with respect to subparagraph (3) above, **Whistleblower Conduct** by an **Insured Person** as set forth in 18 U.S.C. 1514A, shall not be considered solicitation, assistance, active participation or intervention.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                    Policy Number:  DOL1346214

Countersigned by: _____         Endorsement Effective Date:   4/14/2016
                          *Authorized Representative*





*ExecPro*

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

# AMENDMENT TO SECTION IV.
# EXCLUSIONS

It is understood and agreed that Section IV. <u>H</u> of the Policy is hereby deleted and replaced with the
following:

Section IV. <u>H</u>

by or on behalf of the **Company**, or any security holder of the **Company**, or any **Directors** or **Officers**, provided,
however, this exclusion shall not apply to:

(1)        any **Employment Practices Claim**;

(2)        any **Claim** brought by any **Directors** or **Officers** where such **Claim** is in the form of a cross-claim or third
           party claim for contribution or indemnity which is part of and results directly from a **Claim** which is not
           otherwise excluded by the terms of this Policy; or

(3)        any **Claim** brought by any security holder of the **Company** whether directly or derivatively, if the security
           holder bringing such **Claim** is acting totally independent of, and without the solicitation, assistance, active
           participation or intervention of any **Director** or **Officer** or the **Company**;

           For the purposes of Section IV.H.(3), where one or more security holders allege, certify or affirm there is
           likely support for their **Claim** by referring to any of the following actions taken by a **Director** or **Officer**,
           such allegations, certification or affirmation shall not, in itself, demonstrate such security holder is not
           "acting totally independent of, and without solicitation, assistance, active participation or intervention of
           any **Director** or **Officer** of the **Company**":

           a.    providing information to, causing information to be provided to, or otherwise assisting in an
                 investigation conducted by a federal regulatory agency, a federal law enforcement agency, or any
                 member or committee of the United States Congress regarding the possible violation by the **Company**
                 or any **Director** or **Officer** of the law, rules, or regulations listed in 18 U.S.C. 1514A(a)(1);

           b.    filing, causing to be filed, testifying, participating in, or otherwise assisting in a proceeding relating to
                 the possible violation by the **Company** or any **Director** or **Officer** of law, rules, or regulations listed in
                 18 U.S.C. 1514A(a)(2);

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                    Policy Number:  DOL1346214

Countersigned by: _____              Endorsement Effective Date:  4/14/2016
                        *Authorized Representative*



ExecPro℠

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## AMENDMENT TO SECTION IV.
## EXCLUSIONS

c.   filing a complaint with the United States Secretary of Labor, as authorized by 18 U.S.C. 1514A(b)(1)(A); or

d.   bringing an action at law or equity to the extent that such action seeks relief pursuant to 18 U.S.C. 1514A(b)(1)(B).

(4)   any **Claim** brought by the receiver, conservator, liquidator, trustee, rehabilitator, examiner, creditors' committee (or any assignee thereof) or similar official of the **Company**, if any, in the event of **Financial Insolvency**;

(5)   any **Claim** brought by any former **Directors** or **Officers** who have not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, general counsel or risk manager (or equivalent position) or consultant for the **Company** for at least three (3) years prior to the commencement of such **Claim**, if the former **Directors** or **Officers** bringing such **Claim** are acting totally independent of, and without the solicitation, assistance, active participation or intervention of any **Directors** or **Officers** or the **Company**; or

(6)   any **Claim** brought by any **Directors** or **Officers** where such **Claim** is brought and maintained:

a.   solely and entirely in a jurisdiction other than the United States of America, its territories and possessions; and

b.   subject to the substantive and procedural laws of a jurisdiction other than the United States of America, its territories and possessions.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.



*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## AMENDMENT TO SECTION IV.
## EXCLUSIONS

It is understood and agreed that Section IV. <u>A.</u> of the Policy is hereby deleted and replaced with the following:

**_A_ .**   brought about or contributed to by:

      (1)   any **Insureds** gaining any personal profit, financial advantage or remuneration to which they were not legally entitled. However, this exclusion shall not apply to that portion of **Loss** from a **Securities Claim** attributable to an alleged violation of Section 11,12 or 15 of the Securities Act of 1933, as amended, or similar provisions of any federal securities law; or

      (2)   the deliberately fraudulent or deliberately criminal acts of any **Insureds**;

provided, however, this exclusion shall not apply unless and until there is a final, non-appealable adjudication as to such conduct in the underlying proceeding. This exclusion shall not apply to coverage provided under Insuring Agreement I.B.;

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:   4/14/2016 to Policy Expiration                    Policy Number:  DOL1346214

Countersigned by:  _____          Endorsement Effective Date:   4/14/2016
                        *Authorized Representative*



*ExecPro*

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## AMENDMENT TO SECTION VI.
## RETENTION

It is understood and agreed that Section VI. <u>B.</u> of the Policy is hereby deleted and replaced with the following:

Section VI. B.

More than one **Claim** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** shall be considered a single **Claim.** All such **Claims** constituting a single **Claim** shall be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage.

In the event a **Claim** triggers more than one Retention, only the highest Retention shall apply. In no event however shall there be a Retention for any **Claim** brought under Section I.A. of the Policy unless such Retention is required pursuant to State Law.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:   4/14/2016 to Policy Expiration                    Policy Number:  DOL1346214

Countersigned by:  _____              Endorsement Effective Date:   4/14/2016
                        *Authorized Representative*





*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

# AMENDMENT TO SECTION VII.
# COSTS OF DEFENSE AND SETTLEMENTS

It is understood and agreed that Section VII. __A__ of the Policy is hereby deleted and replaced with the following:

Section VII. __A__

The **Insureds** shall not incur **Costs of Defense**, or admit liability, offer to settle, or agree to any settlement in connection with any **Claim** without the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld. The **Insureds** shall provide the **Insurer** with full cooperation and all information and particulars it may reasonably request in order to reach a decision as to such consent. The failure of any **Insured** to provide the **Insurer** with full cooperation and all information and particulars it may reasonably request shall not impair the rights of any other **Insured** under this Policy. Any **Loss** resulting from any admission of liability, agreement to settle, or **Costs of Defense** incurred prior to the **Insurer's** consent shall not be covered hereunder.

Notwithstanding the foregoing, if a **Claim** can be resolved in which all **Loss**, including **Costs of Defense**, does not exceed the applicable Retention, then the **Insurer's** consent shall not be required, provided, however, the **Insureds** agree to notify the **Insurer** of the disposition and provide the **Insurer** with all information and particulars it may reasonably request about the **Claim** and its disposition as soon as practicable and in no event later than the expiration of this Policy.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                    Policy Number:  DOL1346214

Countersigned by:  _____                Endorsement Effective Date:  4/14/2016
                        *Authorized Representative*





_ExecPro_™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## AMENDMENT TO SECTION VII.
## COSTS OF DEFENSE AND SETTLEMENTS

It is understood and agreed that Section VII. E .of the Policy is hereby deleted and replaced with the following:

Section VII. E .

The **Insurer** shall advance **Costs of Defense** prior to the final disposition of any covered **Claim.** Such advancement shall be within 90 days after receipt of written evidence that **Cost of Defense** have been incurred.  Any advancement shall be on the condition that:

(1) the appropriate Retention has been satisfied, provided, however, this condition shall not apply in the event of the **Financial Insolvency** of the **Company**;

(2) any amounts advanced by the **Insurer** shall serve to reduce the Limit of Liability stated in Item 3 of the Declarations to the extent they are not in fact repaid;

(3) the **Company** and **Insured Persons** and the **Insurer** have agreed upon the portion of the **Costs of Defense** attributable to covered **Claims** against the **Insureds**; and

(4) in the event it is finally established that the **Insurer** has no liability under the Policy for such **Claim**, the **Company** and **Insured Persons** will repay the **Insurer**, upon demand, all **Costs of Defense** advanced by virtue of this provision.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                Policy Number:  DOL1346214

Countersigned by: _____                Endorsement Effective Date:  4/14/2016
            _Authorized Representative_





*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## AMENDMENT TO SECTION VIII.
## NOTICE OF CLAIM

It is understood and agreed that Section VIII.D. of the Policy is deleted and replaced with the following:

**D.**    Notice to the **Insurer** as provided in Sections VIII.A. or VIII.B. shall be e-mailed to ELDClaims@gaic.com or mailed to:

        **GREAT AMERICAN INSURANCE GROUP**
        **EXECUTIVE LIABILITY DIVISION**
        **CLAIMS DEPARTMENT**
        **P.O. BOX 66943  CHICAGO, IL 60666**

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration        Policy Number:  DOL1346214

Countersigned by:  _____        Endorsement Effective Date:  4/14/2016
               *Authorized Representative*





ExecPro™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## ADDITION TO SECTION IX.
## GENERAL CONDITIONS

It is understood and agreed that Section IX. of the Policy is hereby amended by the addition of the following:

Section IX.  __O__ .

In the event that the Insurer shall announce either:

(1) a new private company insurance policy form that covers D&O and EPL; or

(2) an enhancement of coverage endorsement(s) to the D&O or EPL coverage sections of this Policy form, which is to be made available to all **Insureds**, for which no additional premium is required and has been filed and approved in the state of domicile of the Corporation;

Then the **Corporation** shall have the right to such new policy or such new coverage enhancement endorsement(s); provided that the **Corporation** has requested in writing such new policy or such new coverage enhancement(s) and subject to all underwriting information or particulars as the **Insurer** may require for such new policy or enhanced coverage.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                  Policy Number:  DOL1346214

Countersigned by:  _____              Endorsement Effective Date:  4/14/2016
                        *Authorized Representative*



*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

# AMENDMENT TO SECTION IX.
# GENERAL CONDITIONS

It is understood and agreed that Section IX. of the Policy is hereby amended by the addition of the following:

Section IX.   P   . **Order of Payments**

1.    In the event of a **Loss** arising from a **Claim** or **Claims** for which payment is due under the provisions of this **Policy**, a determination shall first be made as to the total amount due under all the terms of this **Policy**.

2.    Once the total amount due under all the terms of this **Policy** has been determined, the payment of such **Loss** shall be governed by the following:

(a)    With respect to any **Claim** covered under the provisions of this **Policy** for which the total amount of **Loss** exceeds the remaining available **Limit of Liability** of this **Policy**, this **Policy** shall:

   (i)    first pay such **Loss** for which coverage is provided under Section I.A. of the **Policy**, then with respect to any remaining **Limit of Liability**,

   (ii)    either pay or withhold payment for such **Loss** for which coverage is provided under Section I.B. and/or I.C. of the **Policy**.

(b)    With respect to any **Claim** for which coverage is provided under Sections I.A., I.B. and/or I.C. of the **Policy** (including those circumstances described in sub-paragraph (a) above), the **Insurer** shall:

   (i)    first pay such **Loss** for which coverage is provided under Section I.A. of the **Policy**, then

   (ii)    either pay or withhold payment for such **Loss** for which coverage is provided under Sections I.B. and/or I.C. of the **Policy**.

---

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                    Policy Number:  DOL1346214

Countersigned by:  _____                    Endorsement Effective Date:  4/14/2016
                  *Authorized Representative*

D 2712 (31)  (01/99)                              Endorsement:   16                    Page 1 of 2



*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## ADDITION TO SECTION IX.
## GENERAL CONDITIONS

---

(c)     In the event that the **Insurer** withholds payment under Sections I.B. and/or I.C. of the **Policy** pursuant to sub-paragraph (a)(ii) or (b)(ii) above, then the **Insurer** shall at any time in the future release such **Loss** payment to the **Company**, or if the **Corporation** so directs, apply such **Loss** payment to any individual **Insured Person** for **Loss** arising from a **Claim** covered under this **Policy** pursuant to Section I.A. of the **Policy**.

(d)     Solely for the purposes of determining the amount allocated to Section I.A. under sub-paragraph (a)(i) and (b)(i) above, the following shall apply: In the event of a split judgment, that portion of the judgment, if any, applicable to the individuals will be allocated to Section I.A..    In the event of a settlement, unless otherwise instructed by counsel representing all individual **Insured Persons** in the **Claim**, 100% of the total amount due under the **Policy** for such **Claim**, pursuant to paragraph 1 of this endorsement, shall be allocated to Section I.A..

In no event, however, shall this sub-paragraph (d) be construed or compel the **Insurer** to pay in the aggregate, under Sections I.A., I.B. and I.C. combined, **Loss** in excess of the amount determined pursuant to paragraph 1 of this endorsement for the **Claim**, which amount shall remain the maximum **Loss** paid by the **Insurer** under this **Policy** for the **Claim**.

3.     Nothing in this endorsement shall be construed to increase the **Limit of Liability** of the **Insurer** under this **Policy**.    In addition, nothing in this endorsement shall be construed to increase the amount of total **Loss** to be paid by the **Insurer** for any **Claim** under this **Policy**, such amount to be determined in accordance with paragraph 1 of this endorsement pursuant to all the terms and conditions, of this **Policy**.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

---



**ExecPro**™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## INSURED ENTITY COVERAGE WITH CONTRACT
## EMPLOYEE LANGUAGE

For purposes of coverage under this endorsement only, it is understood and agreed that the Policy is
amended as follows:

1.      Section I.C. is deleted and replaced with the following:

> **C.**      The **Insurer** shall pay on behalf of the **Insured Entity** all **Loss** which the **Insured
> Entity** shall be legally obligated to pay as a result of a **Claim** (including an
> **Employment Practices Claim** and a **Securities Claim**) first made against the
> **Insured Entity** during the **Policy Period** or the **Discovery Period** for a **Wrongful
> Act**.

2.      With respect to all Insuring Agreements I.A. through I.C., Section III.F. is deleted and replaced
with the following:

> **F.**      "**Employment Practices Claim**" shall mean any **Claim** brought by or on behalf of
> any past, present or future employee of the **Company** or **Outside Entity**, any
> **Contract Employee** or any applicant for employment with the **Company** or **Outside
> Entity**, alleging an **Employment Practice Wrongful Act**.

3.      Section III.G. is deleted and replaced with the following:

"**Employment Practices Wrongful Act**" shall mean any of the following acts related to
employment:

> (1)      wrongful dismissal, discharge or termination of employment, whether actual or
> constructive, or breach of an implied employment contract;
>
> (2)      employment related misrepresentation;
>
> (3)      workplace harassment of any kind including sexual harassment;
>
> (4)      discrimination;
>
> (5)      wrongful failure to employ or promote;

---

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                    Policy Number:  DOL1346214

Countersigned by:  _____                    Endorsement Effective Date:  4/14/2016
                    *Authorized Representative*

---



*ExecPro*

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## INSURED ENTITY COVERAGE WITH CONTRACT
## EMPLOYEE LANGUAGE

(6)    wrongful discipline;

(7)    wrongful demotion or deprivation of career opportunity, including defamatory
statements made in connection with an employee reference;

(8)    failure to grant tenure;

(9)    negligent evaluation;

(10)    failure to provide and enforce adequate workplace or employment policies and
procedures;

(11)    wrongful retaliation; or

(12)    employment related libel, slander, defamation, or invasion of privacy;

provided, however, **Employment Practices Wrongful Act** shall not include a **Wage and Hour
Wrongful Act**.

4.    Section III.L. is amended by the addition of the following:

**Loss**, other than **Costs of Defense**, shall also not include:

any obligation of the **Insured Entity** as a result of a **Claim** seeking relief or redress in any form
other than money damages, including but not limited to any obligation of the **Insured Entity** to
modify any building or property; or

any obligation of the **Insured Entity** to pay salary, wages or other employment-related benefits
to any employee under an express or implied contract unless such obligation would attach in the
absence of such contract.

5.    Section III.R.(2) is deleted and replaced with the following:

(2)    any actual or alleged act, omission, error, misstatement, misleading statement,
neglect, breach of duty, or **Employment Practices Wrongful Act** by the **Insured
Entity**, but only with respect to Insuring Agreement I.C.;

6.    Section III. is amended by the addition of the following:

"**Contract Employee**" shall mean any individual who is leased or is contracted to the **Company**,
or is an independent contractor for the **Company**, but only if such individual performs work or
services for or on behalf of the **Company**.



*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## INSURED ENTITY COVERAGE WITH CONTRACT
## EMPLOYEE LANGUAGE

"**Wage and Hour Wrongful Act**" shall mean any actual or alleged violation(s) of any federal, state or local wage and hour laws, regulations or rules including, without limitation, the Fair Labor Standards Act (except the Equal Pay Act of 1963 and any amendments thereto) or the California Labor Code; provided, however, a **Wage and Hour Wrongful Act** shall not include actual or alleged retaliation for the exercise of rights pursuant to such wage and hour laws, regulations or rules;

7.      Section IV. is amended with the addition of the following:

for a **Wage and Hour Wrongful Act**; provided, however, this exclusion shall not apply to any **Claim** alleging retaliation for the exercise of rights pursuant to such wage and hour laws, regulations or rules;

for any actual or alleged violation by an **Insured** of the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 and the Occupational Safety and Health Act; provided, however, this limitation of coverage shall not apply to any **Claim** alleging retaliation for the exercise of rights pursuant to any such laws;

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.



*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

# ADDITION TO SECTION IX.
# GENERAL CONDITIONS

It is understood and agreed that Section IX. of the Policy is hereby amended by the addition of the following:

**Section IX. General Conditions**

____ . **Extradition Coverage**

1. Section III. of the Policy is amended by the addition of the following:

   ____ . "**Extradition**" shall mean any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

2. Section III.A. of the Policy is amended by the addition of the following:

   **Claim** shall also mean the official request for **Extradition** of any **Insured Persons** or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**.

3. Section III.D. of the Policy is amended by the addition of the following:

   "**Costs of Defense**" shall also mean reasonable and necessary fees, costs and expenses incurred through legal counsel and consented to by the **Insurer** resulting from an **Insured Person** lawfully:

   (1)  opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of that **Insured Person**; or

   (2)  appealing any order or other grant of **Extradition** of that **Insured Person**.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                Policy Number:  DOL1346214

Countersigned by:  _____        Endorsement Effective Date:  4/14/2016
                            *Authorized Representative*

D 2712(145) (01/99)                              Endorsement:   18                Page 1 of 1





*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

# ADDITION TO SECTION IX.
# GENERAL CONDITIONS

It is understood and agreed that Section IX. of the Policy is hereby amended by the addition of the following:

Section IX. __R__ .

It is understood and agreed the NOTE at the end of Section IV. is hereby deleted and replaced with the following:

NOTE: For the purpose of determining the applicability of the aforementioned Exclusion A., it is understood and agreed that:

(1)  the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person**; and

(2)  only the **Wrongful Acts** of any past, present or future chief executive officer, or chief financial officer of the **Corporation** shall be imputed to the **Insured Entity**.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration          Policy Number:  DOL1346214

Countersigned by:  _____          Endorsement Effective Date:  4/14/2016
             *Authorized Representative*





*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

# ADDITION TO SECTION IX.
# GENERAL CONDITIONS

It is understood and agreed that Section IX. of the Policy is hereby amended by the addition of the following:

Section IX. __S__ . **Elite Plus Coverage Amendments**

It is understood and agreed that the following changes are made to the Policy:

1.      Section III. B. of the Policy is hereby deleted and replaced with the following:

   B.  "**Company**" shall mean:

      (1)  the **Corporation**;

      (2)  any **Subsidiary**; and

      (3)  in the event of **Financial Insolvency**, the resulting Debtor in Possession (or foreign equivalent status), if any.

2.      Section III. M. of the Policy is hereby deleted and replaced with the following:

   M. **"Outside Entity"** shall mean any non-profit and/or eleemosynary organizations.

3.      Section III. Q.(2.) of the Policy is hereby deleted and replaced with the following:

   (2)  subsequent to the inception date of this Policy by reason of being created or acquired by the **Company** after such date, if the entity's total assets do not exceed ___thirty___ percent ( __30__ %) of the total consolidated assets of the **Corporation** as of the inception date of this Policy; or

4.      Section IV.  E. of the Policy is hereby deleted and replaced with the following:

   E.  for any violations of the Employee Retirement Income Security Act of 1974 or any amendments thereto or any similar provisions of state statutory, common or foreign law;

---

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration        Policy Number:  DOL1346214

Countersigned by: _____        Endorsement Effective Date:  4/14/2016
                  *Authorized Representative*



*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## ADDITION TO SECTION IX.
## GENERAL CONDITIONS

---

5.  Section IV. H. of the Policy is hereby deleted and replaced with the following:

H.  by or on behalf of the **Company**, or any security holder of the **Company**, or any **Directors** or **Officers**, provided, however, this exclusion shall not apply to:

(1)  any **Employment Practices Claim**;

(2)  any **Claim** brought by any **Directors** or **Officers** where such **Claim** is in the form of a cross-claim or third party claim for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded by the terms of this Policy; or

(3)  any **Claim** brought by any security holder of the **Company** whether directly or derivatively, if the security holder bringing such **Claim** is acting totally independent of, and without the solicitation, assistance, active participation or intervention of any **Director** or **Officer** or the **Company**;

For the purposes of Section IV.H.(3), where one or more security holders allege, certify or affirm there is likely support for their **Claim** by referring to any of the following actions taken by a **Director** or **Officer**, such allegations, certification or affirmation shall not, in itself, demonstrate such security holder is not "acting totally independently of, and without solicitation, assistance, active participation or intervention of any **Director** or **Officer** or the **Company"**:

a.  providing information to, causing information to be provided to, or otherwise assisting in an investigation conducted by a federal regulatory agency, a federal law enforcement agency, or any member or committee of the United States Congress regarding the possible violation by the **Company** or any **Director** or **Officer** of the laws, rules, and regulations listed in 18 U.S.C. 1514A(a)(1);

b.  filing, causing to be filed, testifying, participating in, or otherwise assisting in a proceeding relating to the possible violation by the **Company** or any **Director** or **Officer** of law, rules, or regulations listed in18 U.S.C. 1514A(a)(2);

c.  filing a complaint with the United States Secretary of Labor, as authorized by 18 U.S.C. 1514A(b)(1)(A); or

d.  bringing an action at law or equity to the extent that such action seeks relief pursuant to 18 U.S.C. 1514A(b)(1)(B).

---



*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## ADDITION TO SECTION IX.
## GENERAL CONDITIONS

(4)    any **Claim** brought by the receiver, conservator, liquidator, trustee, rehabilitator, examiner or similar official of the **Company**, if any, in the event of **Financial Insolvency**;

(5)    any **Claim** brought by any former **Directors** or **Officers** who have not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, general counsel or risk manager (or equivalent position) or consultant for the **Company** for at least four years prior to the commencement of such **Claim**, if the former **Directors** or **Officers** bringing such **Claim** are acting totally independent of, and without the solicitation, assistance, active participation or intervention of any **Directors** or **Officers** or the **Company**; or

(6)    any **Claim** brought by any **Directors** or **Officers** where such **Claim** is brought and maintained:

a.    solely and entirely in a jurisdiction other than the United States of America, its territories and possessions; and

b.    subject to the substantive and procedural laws of a jurisdiction other than the United States of America, its territories and possessions.

6.    Section IV. I. of the Policy is hereby deleted and replaced with the following:

I.    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving actual or alleged seepage, pollution, radiation, emission or contamination of any kind; provided, however, that this exclusion shall not apply to: 1) any **Securities Claim**, or 2) any coverage provided under Insuring Agreement 1.A.;

7.    Section IV. K. of the Policy is hereby deleted and replaced with the following:

K.    which is insured in whole or in part by any other valid and collectible policy or policies, (except with respect to any excess beyond the amount or amounts of coverage under such other policy or policies), whether such other policy or policies are stated to be primary, contributory, excess, contingent, or otherwise.

8.    Section VIII. A.(2)  of the Policy is hereby deleted and replaced with the following:

(2)    as defined in Section III.A.(2) which is made during the **Policy Period**.  Such notice shall be given as soon as practicable from the date the General Counsel, Risk Manager, or person with equivalent responsibility has knowledge of the **Claim**, and in no event later than ninety (90) days after the end of the **Policy Period**.



**ExecPro**

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

# ADDITION TO SECTION IX.
## GENERAL CONDITIONS

9.    Section IX. G. of the Policy is hereby deleted and replaced with the following:

(1)    Spousal Provision
The coverage provided by this Policy shall also apply to the lawful spouse or
"Domestic Partner" of an **Insured Person**, but only for **Claims** arising out of any
actual or alleged **Wrongful Acts** of an **Insured Person**.

(2)    Worldwide Provision
The coverage provided under this Policy shall apply worldwide. The term
**Directors** and **Officers** is deemed to include individuals who serve in equivalent
positions in foreign **Subsidiaries**.

(3)    Estates and Legal Representatives
The coverage provided by this Policy shall also apply to the estates, heirs, legal
representatives, or assigns of any **Insured Persons** in the event of their death,
incapacity or bankruptcy, but only for **Claims** arising out of any actual or alleged
**Wrongful Acts** of any **Insured Persons**.

Note: for the purpose of (1) above, the term "Domestic Partner" shall mean any natural person
qualifying as a domestic partner under the provisions of any applicable federal, state or local law.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms,
conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.



*ExecPro*™

**GREATAMERICAN**®
**INSURANCE GROUP**

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

# THIRD PARTY COVERAGE

For purposes of coverage under this endorsement only, it is understood and agreed that Section IX. of the Policy is amended by the addition of the following:

Section IX. __T__ .    Third Party Liability Coverage

1.    Section I. is deleted and replaced with the following:

**Section I. Insuring Agreements**

    **A.**    The **Insurer** shall pay on behalf of the **Insured Persons** all **Loss** which the **Insured Persons** shall be legally obligated to pay as a result of a **Third Party Claim** first made against the **Insured Persons** during the **Policy Period** or the **Discovery Period** for a **Business Practices Wrongful Act**, except for any **Loss** which the **Company** actually pays as indemnification.

    **B.**    The **Insurer** shall pay on behalf of the **Company** all **Loss** which the **Insured Persons** shall be legally obligated to pay as a result of a **Third Party Claim** first made against the **Insured Persons** during the **Policy Period** or the **Discovery Period** for a **Business Practices Wrongful Act**, but only to the extent the **Company** is required or permitted by law to indemnify the **Insured Persons**.

    **C.**    The **Insurer** shall pay on behalf of the **Insured Entity** all **Loss** which the **Insured Entity** shall be legally obligated to pay as a result of a **Third Party Claim** first made against the **Insured Entity** during the **Policy Period** or the **Discovery Period** for a **Business Practices Wrongful Act**.

2.    Section III. is amended by the addition of the following:

    __U__ .    "**Third Party Claim**" shall mean any **Claim** brought by a customer, client, supplier, distributor, independent contractor of the **Company,** or any other individual or group of individuals for any **Business Practices Wrongful Act**.

---

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                    Policy Number:  DOL1346214

Countersigned by:  _____          Endorsement Effective Date:  4/14/2016
                          *Authorized Representative*



*ExecPro*®

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## THIRD PARTY COVERAGE

___V___ .  "**Business Practices Wrongful Act**" shall mean any actual or alleged act of discrimination, sexual harassment or the violation of any individual's civil rights related to such discrimination or sexual harassment.

3.    Section III.L. is amended by the addition of the following:

**Loss**, other than **Costs of Defense**, shall also not include:

any obligation of the **Insured Entity** as a result of a **Claim** seeking relief or redress in any form other than money damages, including but not limited to any obligation of the **Insured Entity** to modify any building or property.

4.    Sections III.R. (1) and III.R.(2) are deleted and replaced with the following:

(1)    any actual or alleged act, omission, error, misstatement, misleading statement, neglect, breach of duty or **Business Practices Wrongful Act** by any **Insured Persons** in their capacity with the **Company**;

(2)    any actual or alleged act, omission, error, misstatement, misleading statement, neglect, breach of duty or **Business Practices Wrongful Act** by the **Insured Entity**, but only with respect to Insuring Agreement I.C.;

5.    Section IV.D. (3) is deleted in its entirety.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.



*ExecPro*

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## AMENDMENT TO SECTION IX.
## GENERAL CONDITIONS

It is understood and agreed that Section IX. A. (1) .of the Policy is hereby deleted and replaced with the following:

Section IX. A. (1) .

This Policy may be canceled by the **Corporation** at any time by written notice to the **Insurer**.  Upon cancellation, the **Insurer** shall retain the pro rata portion of the premium, unless this Policy is converted to Run-Off pursuant to Section IX. E. wherein the entire premium for this Policy shall be deemed earned.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:   4/14/2016 to Policy Expiration                    Policy Number:  DOL1346214

Countersigned by:  _____            Endorsement Effective Date:   4/14/2016
                              *Authorized Representative*

D 2713     (01/99)                                         Endorsement:    22                     Page 1 of 1





*ExecPro*

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## AMENDMENT TO SECTION IX.
## GENERAL CONDITIONS

It is understood and agreed that Section IX. <u>B.</u> of the Policy is hereby deleted and replaced with the following:

Section IX. <u>B.</u>  Proposal Form

It is agreed by the **Company** and the **Insured Persons** that the particulars and statements contained in the Proposal Form(s), any information provided therewith, any public documents filed by the **Company** on the SEC's Electronic Data Gathering, Analysis, and Retrieval system ("EDGAR") within the twelve (12) month period prior to the inception date of this Policy, the most recent Form 10k filed and the most recent annual report (which shall be on file with the **Insurer** and be deemed attached hereto as if physically attached hereto), are the basis of this Policy and are to be considered as incorporated in and constituting a part of the Policy.  It is further understood and agreed by the **Company** and the **Directors and Officers** that the statements in the Proposal Form(s) or in any information provided therewith are their representations, and that this Policy is issued in reliance upon the truth of such representations. In the event any of the statements, representations or information in the Proposal Form(s) and/or any information provided therewith (hereafter referred to as "Facts"), are not true and accurate:

(A)     There shall be no coverage for any **Claims** made pursuant to Insuring Agreement A. of this Policy with respect to any **Insured Person** who had knowledge, as of the effective date of the **Policy Period**, of any Facts that were not truthfully and accurately disclosed in the Proposal Form(s), whether or not such **Insured Person** knew of such disclosure in the Proposal Form(s). The knowledge of any **Insured Person** shall not be imputed to any other **Insured Person** for the purposes of determining coverage under Insuring Agreement A.; and

(B)     There shall be no coverage for any **Claims** made pursuant to Insuring Agreement B. of this Policy to the extent the **Company** indemnifies any **Insured Person** who had knowledge, as of the effective date of this **Policy Period**, of any Facts that were not truthfully and accurately disclosed in the Proposal Form(s), whether or not such **Insured Person** knew of such disclosure in the Proposal Form(s).  For purposes of this paragraph (B), knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**; and

---

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                     Policy Number:  DOL1346214

Countersigned by: _____                     Endorsement Effective Date:  4/14/2016
                          *Authorized Representative*



**ExecPro**

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## AMENDMENT TO SECTION IX.
## GENERAL CONDITIONS

(C)     There shall be no coverage for any **Claims** made pursuant to Insuring Agreement C. of this Policy if the person(s) who signed the Proposal Form(s) for this coverage or any **Insured Person** who is or was a past, present or future chief financial officer, in-house general counsel, chief executive officer, president, or chairperson of the **Company** had knowledge, as of the effective date of the **Policy Period**, of any Facts that were not truthfully and accurately disclosed in the Proposal Form(s), whether or not such **Insured Person** knew of such disclosure in the Proposal Form(s) ; and

(D)     This Policy shall not be rescinded by the **Insurer.**

The terms and conditions contained in this Endorsement supersede any inconsistent terms and conditions contained in the Proposal Form.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.




*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

# AMENDMENT TO SECTION IX.
## GENERAL CONDITIONS

It is understood and agreed that Section IX.   H  .of the Policy is hereby deleted and replaced with the following:

Section IX.   H  .

In the event of payment of **Loss** under this Policy, the **Insurer** shall be subrogated to all the **Insureds'** rights of recovery.  The **Company** and **Insured Persons** shall do everything necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of any **Insured Persons** or the **Company**.  In no event, however, shall the **Insurer** exercise its rights to subrogation against an **Insured Person** under this Policy unless the exclusion set forth in Section IV.A. of the Policy applies to such **Insured Person**.

In the event the **Insurer** shall for any reason pay indemnifiable **Loss** on behalf of an **Insured Person**, the **Insurer** shall have the contractual right hereunder to recover from the **Company** the amount of such **Loss** equal to the amount of the Retention not satisfied by the **Company** and shall be subrogated to the rights of the **Insured Persons** hereunder.  The **Insurer** shall have the right to recover from the **Company** amounts the **Insurer** pays that are the result of any unsatisfied Retention arising from the failure of the **Company** to indemnify any **Insured Person** for **Loss** incurred by such **Insured Person**.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                Policy Number:  DOL1346214

Countersigned by:  _____         Endorsement Effective Date:  4/14/2016
                    *Authorized Representative*





*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

# TWELVE MONTH DISCOVERY PERIOD

It is understood and agreed that Section II.A. of the Policy is hereby deleted and replaced with the following:

Section II.A.

In the event the **Insurer** refuses to renew this Policy or the **Corporation** chooses to cancel or not renew this Policy, the **Corporation** shall have the right, upon payment of _____ one hundred _____ percent ( 100 %) of the annual premium, (or if the **Policy Period** is other than annual, _____ one hundred _____ percent ( 100 %) of the annualized premium), to an extension of the coverage provided by this Policy with respect to any **Claim** first made against any **Insured** during the period of twelve (12) months after the end of the **Policy Period**, but only with respect to any **Wrongful Act** committed before the end of the **Policy Period**.  This twelve (12) month period shall be referred to in this Policy as the **Discovery Period**.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                     Policy Number:  DOL1346214

Countersigned by: _____              Endorsement Effective Date:  4/14/2016
                        *Authorized Representative*

D 2714     (01/99)                                    Endorsement:   25                Page 1 of 1



**ExecPro**

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

# ADDITION OF SUBSIDIARY

It is understood and agreed that the term "**Subsidiary**" shall include the following:

Relativity EuropaCorp Distribution, LLC

As respects the aforementioned entity,(hereafter: **RED**) the **Insurer's** liability for **Loss** in connection with any **Claim** made against **RED** and/or any Insured Persons of **RED** shall be limited to the percentage of such **Loss** which is equivalent to the **Company's** equity ownership interest in **RED**. This shall be determined at the time such **Claim** is first made against **RED** and/or any **Insured Person** of **RED**. In no event shall the Insurer's liability for **Loss** in connection with any **Claim**, as described previously, exceed 50% of such **Loss**.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                    Policy Number:  DOL1346214

Countersigned by:  _____                    Endorsement Effective Date:  4/14/2016
                   *Authorized Representative*



# TERRORISM COVERAGE ENDORSEMENT
# CAP ON LOSS FROM CERTIFIED ACTS

Subject to all terms and conditions of this Policy, including any follow-form provisions, this Policy is amended by the addition of the following:

## CERTIFIED ACTS OF TERRORISM COVERAGE

"Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury in accordance with the provisions of the Terrorism Risk Insurance Act to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "Certified Act of Terrorism" include the following:

1.      the act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.      the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States government by coercion.

If the aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year in the aggregate and the Insurer has met its deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rate allocation in accordance with procedures established by the Secretary of the Treasury.

It is understood and agreed that the Premium section of the Declarations is amended by the addition of the following:

Terrorism Premium: $  0.00

The Policyholder Disclosure Offer of Terrorism Coverage is attached to and is to be considered as incorporated in and constituting a part of this Policy.

This endorsement does not extend any additional coverage or otherwise change the terms and conditions of any coverage under this Policy.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration                    Policy Number:  DOL1346214

Countersigned by: _____         Endorsement Effective Date:  4/14/2016
                              *Authorized Representative*

# GREAT AMERICAN.
### INSURANCE GROUP

## ECONOMIC AND TRADE SANCTIONS CLAUSE

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:   4/14/2016 to Policy Expiration                    Policy Number:  DOL1346214

Countersigned by: _____              Endorsement Effective Date:   4/14/2016
                             *Authorized Representative*

IL 73 24  (Ed. 08/12)                              Endorsement:    28                    Page 1 of 1



# POLICYHOLDER DISCLOSURE
# OFFER OF TERRORISM COVERAGE

The Terrorism Risk Insurance Act establishes a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. The Act provides that, to be certified, an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals as part of an effort to coerce the government or population of the United States.

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program.  The federal share equals a percentage of that portion of the amount of such insured losses that exceeds the applicable insurer retention. The federal share percentage is dependent upon the calendar year and is shown in the Table below.

| Year | Federal Share |
|------|---------------|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 | 80% |

The Terrorism Risk Insurance Act, as amended in 2015, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses in any one calendar year exceeds $100 billion.  If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

In accordance with the Terrorism Risk Insurance Act, we are required to offer you coverage for losses resulting from an act of terrorism **that is certified under the federal program** as an act of terrorism.   The policy's other provisions will still apply to such an act.

**Terrorism coverage** for acts of terrorism that are certified under the federal program as an act of terrorism is included for no additional premium.  Nonetheless, if you would like to reject such Terrorism coverage, please provide Great American written confirmation of such, and an exclusion will be attached to your policy.




*ExecPro*™

Directors', Officers', Insured Entity
And Employment Practices Liability
Insurance Policy

## DISCOVERY PERIOD

In consideration of the payment of $ ___51,511___, it is understood and agreed that the coverage granted under Section II. of this Policy is hereby extended with respect to any **Claim** first made against any **Insured** for a period of _____12 months_____ ending ____08/24/2018____ but only with respect to any **Wrongful Act** committed on or before ____08/24/2017____ and otherwise covered by this Policy.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  RELATIVITY HOLDINGS, LLC

Policy Period:  4/14/2016 to Policy Expiration          Policy Number:  DOL1346214

Countersigned by: _____          Endorsement Effective Date:  8/24/2017
                              *Authorized Representative*

D 2825    (01/99)                              Endorsement:    33              Page 1 of 1

**EXHIBIT B**

**Policy Number: ELU151886-17**

**XL Specialty Insurance Company**

Renewal of Number: N/A

**Members of the XL America Companies**

---

## EXECUTIVE AND CORPORATE SECURITIES LIABILITY INSURANCE POLICY DECLARATIONS

---

**Regulatory Office**
505 Eagleview Blvd. Suite 100
Dept: Regulatory
Exton, PA 19341-1120
Telephone 800-688-1840

**Executive Offices**
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR, IF APPLICABLE, THE OPTIONAL EXTENSION PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

---

**Item 1. Name and Mailing Address of Parent Company**:

Relativity Holdings, LLC
9242 Beverly Boulevard, Suite 300
Beverly Hills, CA  90210

---

**Item 2. Policy Period**: Inception Date:  August 24, 2017    Expiration Date:  August 24, 2018

**At 12:01 AM Standard Time at your Mailing Address Shown Above**

---

**Item 3. Limit of Liability**:

(A) $250,000    Maximum Aggregate Sublimit of Liability each **Policy Period** for all **Investigation Demands**

(B) $2,000,000    Maximum Aggregate Limit of Liability each **Policy Period** (including **Defense Expenses**) for all **Loss** from all **Claims**, **Investigation Demands** and **Interviews**

---

**Item 4. Retentions**:

| | |
|---|---|
| $0 | each **Insured Person** under INSURING AGREEMENT I (A) or (D) |
| $500,000 | each **Claim**, other than a **Securities Claim**, under INSURING AGREEMENT I (B) or (E) |
| $500,000 | each **Securities Claim** under INSURING AGREEMENT I (B) or (C) |
| $0 | each **Investigation Demand** under INSURING AGREEMENT I (F) |

---

**Item 5. Optional Extension Period**:

Length of Optional Extension Period:  One Year after the end of the **Policy Period**, if elected.

Premium for Optional Extension Period:  $235,000.00

---

**Item 6. Pending and Prior Litigation Date**: August 24, 2017

---

**Item 7. Notices required to be given to the Insurer must be addressed to**:

XL Professional Insurance
100 Constitution Plaza, 17th Floor
Hartford, CT 06103
Toll Free Telephone: 877-953-2636 or proclaimnewnotices@xlcatlin.com

---

**Item 8. Premium**:

| | | |
|---|---|---|
| | | **To Report a Loss** |
| Taxes, Surcharges or Fees | $0.00 | • Dial toll-free #1 (844)777-8323 or visit our |
| | | • Website: https://my.rpsins.com/claimsfnol |
| Total Policy Premium | $235,000.00 | • Contact Insurer directly (see policy section) |

---

BR 70 00 09 14

Page 1 of 2

© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

RPSEXEC/SC/2017.12.17

**EXECUTIVE AND CORPORATE SECURITIES LIABILITY INSURANCE POLICY DECLARATIONS**

---

**Item 9.  Policy Form and Endorsements Attached at Issuance**:

BR 71 00 09 14   XL 80 24 03 03   BR 72 00 11 14   BR 83 11 03 15   BR 80 91 02 16   BR 80 05 11 14
BR 80 09 12 14

---

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE
ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

---

© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

# IN WITNESS

## XL SPECIALTY INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

| | |
|---|---|
| Joseph Tocco | Toni Ann Perkins |
| President | Secretary |

LAD 400 0915 XLS
© 2015 X.L. America, Inc.  All Rights Reserved.  May not be copied without permission.

## POLICYHOLDER DISCLOSURE

## NOTICE OF TERRORISM
## INSURANCE COVERAGE

**Coverage for acts of terrorism is already included in your current policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your existing coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. However, your policy may contain other exclusions that may affect your coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.**

**The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived. Any premium waiver is only valid for the current Policy Period.**

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer: **XL Specialty Insurance Company**

Policy Number: **ELU151686-17**

_____
Signature of Insured

_____
Print Name and Title

_____
Date

NOTICE TO POLICYHOLDERS

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC and possibly the U.S. Department of State.  **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as *Specially Designated Nationals and Blocked Persons.*  This list can be found on the U.S. Department of the Treasury's web site - http//www.treas.gov/ofac.

The Secretary of the Treasury also has identified a number of entities in the insurance, petroleum, and petrochemicals industries determined to be owned or controlled by the Iranian government. Business transactions with any of these entities are expressly prohibited.  These entities have been added to OFAC's list of *Financial Institutions Determined To Be Owned or Controlled by the Government of Iran.*  This list can be found on the U.S. Department of the Treasury's web site - http://www.treasury.gov/resource-center/sanctions/Programs/Pages/iran.aspx, see List of CISADA and NDAA Prohibitions or Conditions

In accordance with OFAC regulations, or any applicable regulation promulgated by the U.S. Department of State, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

PN CW 05 0914

© 2014 X.L. America, Inc.  All rights reserved.  May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

NOTICE TO POLICYHOLDERS

**PRIVACY POLICY**

The XL Catlin insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality.  For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies.  For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way.  In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

<u>Our Privacy Promise</u>

Your privacy and the confidentiality of your business records are important to us.  Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products.  We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you.  Accordingly, we promise that:

1.  We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2.  We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3.  We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4.  We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5.  We will not disclose information about you or your business to any organization outside the XL Catlin insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6.  We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7.  We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8.  We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

<u>Collection and Sources of Information</u>

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services.  The information we collect generally comes from the following sources:

• Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
• Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you.  The information we collect will vary with the type of insurance you seek;

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

NOTICE TO POLICYHOLDERS

- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;
- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies.  The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you.  We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so.  The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim.  In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and
- Credit and Financial Reports – We may receive information about you and your business regarding your credit.  We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law.  If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law.  Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party.  Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment.  "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc.  We also do not disclose to any unaffiliated third party a policy or account number for use in marketing.  We may share with our affiliated companies information that relates to our experience and transactions with the customer.

Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed.  However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

NOTICE TO POLICYHOLDERS

Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you.  We may also disclose information about you to the following categories of person or entities:

• Your independent insurance agent or broker;
• An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
• Persons or organizations that conduct scientific studies, including actuaries and accountants;
• An insurance support organization;
• Another insurer if to prevent fraud or to properly underwrite a risk;
• A state insurance department or other governmental agency, if required by federal, state or local laws; or
• Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| | |
|---|---|
| **Arkansas** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Colorado** | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| **District of Columbia** | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| **Kansas** | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| **Maryland** | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| **New Mexico** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |

© 2017 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **New York** | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | **WARNING**:  Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| **Pennsylvania** | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |

© 2017 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | **All Commercial Insurance, Except As Provided for Workers' Compensation** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Workers' Compensation:** It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:** Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

PN CW 01 0617

© 2017 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

NOTICE TO POLICYHOLDERS

**IMPORTANT INFORMATION TO POLICYHOLDERS - CALIFORNIA**

**In the event you need to contact someone about this Policy for any reason please contact your agent.  If you have additional questions, you may contact the insurance company issuing this Policy at the following address and telephone number:**

> **XL Catlin**
> **Seaview House**
> **70 Seaview Avenue**
> **Stamford, CT  06902-6040**
> **1-800-622-7311**

**If you have a problem with your insurance company, its agent or representative that has not been resolved to your satisfaction, please call or write to the Department of Insurance.**

> **Department of Consumer Affairs**
> **Consumer Information Division**
> **1625 North Market Blvd., Suite N 112**
> **Sacramento, CA  95834**
>
> **Internet Website:  www.dca.ca.gov**
>
> **1-800-952-5210**
> **1-800-326-2297 (TDD Number)**
> **916-445-1254 (If calling from within the Sacramento area)**
> **916-928-1227 (TDD Number if calling from within the Sacramento area)**

**Written correspondence is preferable so that a record of your inquiry can be maintained.  When contacting your agent, company or the Bureau of Insurance, have your Policy Number available.**

**Endorsement No.: 1**
**Named Insured: Relativity Holdings, LLC**
**Policy No.: ELU151686-17**

**XL 80 24 03 03**
**Effective: August 24, 2016**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 8. of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Endorsement No.: 2
Named Insured: Relativity Holdings, LLC
Policy No.: ELU151686-17

Effective: August 24, 2016
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

BR 72 00 11 14

# CALIFORNIA AMENDATORY ENDORSEMENT

In consideration of the premium charged:

1.      Section **II. DEFINITIONS** (O) **"Loss"** is amended by the addition of the following:

In applying the foregoing, punitive damages are not insurable in California.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2014 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Endorsement No.:** 6
**Named Insured: Relativity Holdings, LLC**
**Policy No.: ELU151686-17**

**Effective: August 24, 2016**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# PRIOR ACTS EXCLUSION

In consideration of the premium charged, no coverage will be available for any Claim, Interview or Investigation Demand based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any act, error, omission, misstatement, misleading statement, neglect, breach of duty or Wrongful Act committed or allegedly committed prior to August 24, 2017.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Endorsement No.: 4**
**Named Insured: Relativity Holdings, LLC**
**Policy No.: ELU151686-17**
**Policy Form: EXECUTIVE AND CORPORATE SECURITIES LIABILITY**

**Effective: August 24, 2016**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# REFUSAL/FAILURE/DENIAL TO INDEMNIFY ENDORSEMENT

In consideration of the premium charged:

(1)    In the event that an Insured Person requests that the Insurer pay covered Loss pursuant to Insuring Agreement (A), or (D) that the Company has wrongfully refused, denied to, or failed within sixty (60) days of such request to, indemnify, advance or pay on behalf of such Insured Person that the Company is permitted or required to pay, and the amount of such covered Loss is within the applicable Retention set forth in Item 4 of the Declarations of this Policy applicable to such Claim or Interview, then the Insurer shall advance such amounts on behalf of the Insured Person until either: (i) a Company, Non-Profit Entity or Joint Venture has agreed to make such payments; or (ii) the Retention has been satisfied.  In no event shall any such advancement by the Insurer relieve any Company, Non-Profit Entity or Joint Venture of any duty it may have to provide advancement, payment or indemnification to any Insured Person. Any payment or advancement by the Insurer within an applicable Retention shall apply towards the exhaustion of the Limit of Liability.

(2)    If the Insurer pays under this Policy any indemnification, advancement or payment owed to any Insured Person by any Company, Non-Profit Entity or Joint Venture within an applicable Retention, then that Company, Non-Profit Entity or Joint Venture shall reimburse the Insurer for such amounts, and such amounts shall become immediately due and payable as a direct obligation of the Company, Non-Profit Entity or Joint Venture to the Insurer.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2016 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Endorsement No.:**
**Named Insured: Relativity Holdings, LLC**
**Policy No.: ELU151686-17**

**Effective: August 24, 2012**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND INSURED PERSON TO INCLUDE EMPLOYEES FOR EMPLOYMENT CLAIMS ENDORSEMENT

In consideration of the premium charged, Section II. DEFINITION (J)(2) of the Policy is amended to read in its entirety as follows:

(2)     any past, present or future natural person employee of the Company (other than an individual described in (J)(1) above) to the extent any Claim: (a) is a Securities Claim; (b) alleges any Employment Practices Wrongful Act by such employee; or (c) is made and maintained against both such employee and an Insured Person as defined in (J)(1) above;

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2014 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

Endorsement No.: 8
Named Insured: Relativity Holdings, LLC
Policy No.: ELU151686-17

Effective: August 24, 2016
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND OPTIONAL EXTENSION PERIOD

In consideration of the premium charged, ITEM 5 of the Declarations is amended to read in its entirety as follows:

"ITEM 5. Optional Extension Period:

Length of Optional Extension Period:
(Either one, two or three year(s) after the end of the Policy Period, at the election of the Parent Company)
Premium for Optional Extension Period:   One Year: $235,000.00
Two Years: $352,500.00
Three Years: $470,000.00"

All other terms, conditions and limitations of this policy shall remain unchanged.

© 2014 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**EXECUTIVE AND CORPORATE SECURITIES LIABILITY INSURANCE COVERAGE FORM**


**THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.
PLEASE READ AND REVIEW THE POLICY CAREFULLY.**


In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Insurer identified in the Declarations (hereinafter the "Insurer"), including the Application, and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:

I.   **INSURING AGREEMENTS**

(A)   The Insurer shall pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** for a **Wrongful Act,** except for **Loss** which the **Company** is permitted or required to pay on behalf of the **Insured Persons** as indemnification.

(B)   The Insurer shall pay on behalf of the **Company Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** for a **Wrongful Act** to the extent the **Company** is required or permitted to pay on behalf of the **Insured Persons** as indemnification.

(C)   The Insurer shall pay on behalf of the **Company Loss** resulting solely from any **Securities Claim** first made against the **Company** during the **Policy Period** for a **Wrongful Act.**

(D)   The Insurer shall pay on behalf of the **Insured Persons Defense Expenses** resulting from an **Interview**, except for **Defense Expenses** which the **Company** is permitted or required to pay on behalf of the **Insured Persons** as indemnification.

(E)   The Insurer shall pay on behalf of the **Company Defense Expenses** incurred by the **Insured Persons** resulting from an **Interview** to the extent the **Company** is required or permitted to pay on behalf of the **Insured Persons** such **Defense Expenses**.

(F)   The Insurer shall pay on behalf of the **Company Defense Expenses** incurred by the **Company** resulting from any **Investigation Demand** first made during the **Policy Period**.

II.   **DEFINITIONS**

(A)   "**Application**" means:

(1)   any application, including attachments thereto, or any written information or representation, provided to the Insurer by or on behalf of an **Insured** in connection with the underwriting of this Policy; and

(2)   any publicly available document filed by the **Company** with the U.S. Securities and Exchange Commission or any state, local or foreign equivalent during the twelve (12) months preceding this Policy's Inception Date.

(B)   "**Change In Control**" means:

(1)   the merger or acquisition of the **Parent Company**, or of all or substantially all of its assets by another entity such that the **Parent Company** is not the surviving entity; or

(2)   any person, entity or an affiliated group of persons or entities acting together,  acquire (a) interest representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of the majority of the directors, management committee members or members of the board of managers of the **Parent Company**, as applicable to its organization, or (b) such rights pursuant to written contract or the by-laws, charter, operating agreement or similar document of the **Parent Company**;

.
© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

(C)  "**Claim**" means:

    (1)  any written demand (other than an **Investigation Demand**) for:

        (a)  monetary or non-monetary relief, including injunctive relief; or

        (b)  arbitration,  mediation or other alternative dispute resolution proceeding;

    (2)  any civil, criminal, administrative or regulatory proceeding commenced by:

        (a)  service of a complaint or similar pleading;

        (b)  return of an indictment, information, notice of charges or similar document;

        (c)  an official written request for extradition of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of extradition**;**

    (3)  any investigation of an **Insured Person** commenced by a written statement from an **Enforcement Authority** identifying such **Insured Person** as the subject of an investigation, including any target letter, Wells Notice or similar document;

    (4)  any subpoena served upon an **Insured Person** for testimony or documents in connection with a formal or informal investigation of the **Company** by any **Enforcement Authority**; and

    (5)  any **Corporate Manslaughter Charge**.

(D)  "**Company**" means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the **Policy Period**, subject to GENERAL CONDITIONS VI (D). The term **Company** shall include any such entity as a debtor in possession, as such term is used in Chapter 11 of the United States Bankruptcy Code or any equivalent provision in any foreign jurisdiction.

(E)  "**Corporate Manslaughter Charge**" means a formal criminal proceeding commenced in the United Kingdom against an **Insured Person** of the **Company** domiciled or incorporated in the United Kingdom for involuntary manslaughter (including constructive manslaughter or gross negligence manslaughter) in his or her capacity as a director or officer of the **Company** and directly related to the business of the **Company**.

(F)  "**Defense Expenses**" means reasonable and necessary legal fees, expenses and other costs (including experts' fees):

    (1)  incurred in the investigation, adjustment, settlement, defense and/or appeal of any **Claim, Investigation Demand** or **Interview**, including any preparation for such an **Interview**;

    (2)  incurred due to the arrest and detainment or incarceration of any **Insured Person** in his or her capacity as a director or officer of the **Company** and directly related to the business of the **Company**;

    (3)  incurred in connection with any **Claim** under section 304 of the Sarbanes-Oxley Act of 2002 or imposed pursuant to section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act; or

    (4)  incurred in the defense of any **Corporate Manslaughter Charge**;

**Defense Expenses** will not include the **Company's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers or employees.

© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

(G)    "**Employment Practices Wrongful Act**" means any actual or alleged:

    (1)    wrongful termination of employment whether actual or constructive;

    (2)    employment discrimination of any kind, including violation of any federal, state or local law involving employment or discrimination in employment, which would deprive or potentially deprive any person of employment opportunities or otherwise adversely affect his or her status as an employee because of such person's race, color, religion, age, sex, national origin, disability, pregnancy, or other protected status;

    (3)    sexual or other harassment in the workplace; or

    (4)    wrongful deprivation of career opportunity, employment related misrepresentations, retaliatory treatment against an employee of the **Company**, failure to promote, demotion, wrongful discipline or evaluation, refusal to hire, negligent hiring, or negligent supervision.

(H)    "**Enforcement Authority**" means any federal, state, local or foreign law enforcement or governmental regulatory authority, including the United States Departments of Justice and Labor, Securities and Exchange Commission, attorneys general, or the enforcement unit of any securities exchange or similar self-regulatory organization.

(I)    "**Insured**" means the **Insured Persons** and the **Company**.

(J)    "**Insured Person**" means:

    (1)    any past, present or future natural person director or officer, or member or manager of the board of managers, of the **Company** and those persons serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

    (2)    any past, present or future natural person employee of the **Company** (other than an individual described in (J)(1) above) to the extent any **Claim** is: (a) a **Securities Claim**, or (b) made and maintained against both such employee and an **Insured Person** as defined in (J)(1) above;

    (3)    an individual identified in (J)(1) above who, with the consent of the **Company**, is or was serving as a director, officer, trustee, regent or governor of a **Non-Profit Entity**; or

    (4)    any individual identified in (J)(1) above who, with the consent of the **Company** is or was serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**.

In addition:

In the event of the death, incapacity or bankruptcy of any individual identified above, any **Claim** against the estate, heirs, legal representatives or assigns of such individual for a **Wrongful Act** of such individual will be deemed to be a **Claim** against such individual.

The coverage otherwise available under this Policy to any **Insured Person** will be extended to such **Insured Person's** lawful spouse or domestic partner, but only to the extent such spouse or domestic partner is a party to any **Claim** solely in his or her capacity as a spouse or domestic partner of such persons and only for the purposes of any **Claim** seeking damages recoverable from marital community property, property jointly held by any such person and spouse or domestic partner, or property transferred from any such person to the spouse or domestic partner.

(K)    "**Interrelated Wrongful Acts**" means any **Wrongful Acts**, based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related facts, series of related facts, circumstances, situations, transactions or events.

© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

(L)    "**Interview**" means:

    (1)    a written request first received by an **Insured Person** during the **Policy Period** for a voluntary interview, meeting or sworn statement by:

        (a)    any **Enforcement Authority**; or

        (b)    the **Company** in connection with an **Investigation Demand** or an investigation or other inquiry of the **Company** by an **Enforcement Authority**; or

    (2)    an arrest or confinement of an **Insured Person** during the **Policy Period** to a specified residence or secure custodial premises operated by an **Enforcement Authority**, but only in connection with the business of the **Company** or an **Insured Person's** capacity as such or due to his/her status as such;

provided that **Interview** will not include: any document production or discovery in a legal proceeding; any request that is part of any routine or regularly scheduled oversight, compliance, audit, inspection or examination; or any request that is part of an employment-related investigation or **Claim**.  Any **Interview** as defined in (L)(1) above first received, or as defined in (L)(2) above, occurring, prior to the Inception Date of this Policy are not covered under this Policy.

(M)    "**Investigation Demand**" means an investigation by the **Company** to determine whether it is in its best interest to prosecute the allegations made by a security holder of the **Company** in a derivative demand or action.  An **Investigation Demand** shall be deemed first made upon the earlier of: receipt of such allegations by the **Company** or service of a civil complaint or similar proceeding setting forth such allegations.

(N)    "**Joint Venture**" means any corporation, partnership, joint venture, association or other entity, other than a **Subsidiary**, during any time in which the **Parent Company**, either directly or through one or more **Subsidiary(s)**;

    (1)    owns or controls at least thirty-three percent (33%), but not more than fifty percent (50%), in the aggregate of the outstanding securities or other interests representing the present right to vote for the election or appointment of those persons of such an entity occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**; or

    (2)    has the right, by written contract, ownership of securities or otherwise, to elect, appoint or designate at least thirty-three percent (33%) of those persons described in (N)(1) above.

(O)    "**Loss**" means damages, judgments, settlements, pre-judgment and post-judgment interest or other amounts (including punitive, exemplary or multiplied damages, where insurable by law) that any **Insured** is legally obligated to pay and **Defense Expenses**, including that portion of any settlement which represents the claimant's attorneys' fees. **Loss** will not include that portion which constitutes:

    (1)    fines, penalties or taxes imposed by law; provided that **Loss** will specifically include:

        (a)    civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(b) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(b), the United Kingdom's Bribery Act 2010 (2010 chapter 23), and Section 308 of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246(a)); and

        (b)    solely with respect to **Loss** to which Insuring Agreement (A) applies, fines, penalties or taxes that an **Insured Person** is obligated to pay if such fines, penalties or taxes are insurable by law and are imposed in connection with such **Insured Person's** service with an insolvent **Company;**

    (2)    costs incurred by an **Insured** to comply with an order for non-monetary relief (including injunctive relief) or with any agreement to provide such relief;

© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

(3)    any amount which is uninsurable under the law pursuant to which this Policy is construed; provided that the Insurer will not assert that the portion of any settlement or judgment in a **Claim** arising from an initial or subsequent public offering of the **Company's** securities constitutes uninsurable loss due to the alleged violations of Section 11 and/or 12 of the Securities Act of 1933 as amended (including alleged violations of Section 11 and/or 12 of the Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933);

(4)    any amount arising out of the cleanup, containing, treating, testing, removing, disposing, assessing, monitoring or similar costs relating to pollution, contaminants, waste of any kind, pollutants, product defects that result in the release of hazardous materials or pollutants, or any other hazardous materials;

(5)    any amount which represents or is substantially equivalent to an increase in the consideration paid, or proposed to be paid, by the **Company** in connection with its purchase of any securities or assets of any person, group of persons, or entity;

(6)    the return of any amounts required to be paid by an **Insured Person** pursuant to section 304 of the Sarbanes-Oxley Act of 2002 or promulgated under Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act;

NOTE:    With respect to judgments in which punitive, exemplary or multiplied damage are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law. If, based on the written opinion of counsel for the **Insured**, punitive, exemplary or multiplied damages are insurable under applicable law, the Insurer will not dispute the written opinion of counsel for the **Insured**.

(P)    "**Non-Profit Entity**" means any not-for-profit entity or not-for-profit organization.

(Q)    "**Parent Company**" means the entity named in ITEM 1 of the Declarations.

(R)    "**Policy Period**" means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.  **Policy Period** will include any Optional Extension Period, if applicable.

(S)    "**Securities Claim**" means a **Claim**, other than an administrative or regulatory proceeding against or investigation of the **Company**:

(1)    made against any **Insured** for any actual or alleged violation of any federal, state or local statute,  regulation, or rule or common law regulating securities, including but not limited to the purchase or sale of, or offer to purchase or sell, securities, which is:

(a)    brought by any person or entity resulting from, the purchase or sale of, or offer to purchase or sell, securities of the **Company**; or

(b)    brought by a security holder of the **Company** with respect to such security holder's interest in securities of the **Company**; or

(2)    brought derivatively on behalf of the **Company** by a security holder of the **Company**.

Notwithstanding the foregoing, the term **Securities Claim** shall include an administrative or regulatory proceeding against, or a formal investigation of, the **Company**, but only if and only during the time that such formal investigation or proceeding is also maintained against an **Insured Person**.

© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

(T)     "**Subsidiary**" means any entity during any time in which the **Parent Company** holds directly or indirectly:

      (1)     more than fifty percent (50%) of the voting rights or issued share capital of such entity;

      (2)     between twenty percent (20%) and fifty percent (50%) of the voting rights or issued share capital, together with control of the management of such entity; or

      (3)     the right to appoint or remove a majority of the Board of Directors of such entity.

(U)     "**Wrongful Act**" means:

      (1)     any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by an **Insured Person** while acting in his or her capacity as such or due to his or her status as such;

      (2)     solely with respect to a **Claim** as defined in Definition (C)(4) of the Policy, any other matter concerning an **Insured Person** solely by reason of his or her capacity as such or due to his or her status as such;

      (3)     solely with respect to Insuring Agreement (C) of the **Policy,** any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by the **Company**; or

      (4)     any **Employment Practices Wrongful Act** by an **Insured Person** while acting in his or her capacity as such or due to his or her status as such.

Solely with respect to determining whether a securities holder derivative lawsuit which names the **Company** as a defendant (including as a nominal defendant) is a **Securities Claim** against such **Company** for purposes of Insuring Agreement (C) of the Policy, any **Wrongful Act** as defined in subparagraph (U)(1) above will also be deemed to be a **Wrongful Act** of the **Company**; provided that this provision shall not be deemed to create coverage under this Policy for **Loss** from any **Investigation Demand** pursuant to Insuring Agreement (F) of the Policy.  Any such coverage shall only be available pursuant to Insuring Agreement (F) of the Policy.

## III.    EXCLUSIONS

(A)     No coverage shall be available under this Policy for that portion of any **Claim**, **Interview** or **Investigation Demand** made against an **Insured**:

      (1)     for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage or destruction of any property including loss of use thereof; however, this Exclusion (A)(1) will not apply to: (a) any allegations of libel, slander, defamation, mental anguish or emotional distress if and only to the extent that such allegations are made as part of a **Claim** for an **Employment Practices Wrongful Act**;  (b) any **Securities Claim**; (c) for **Corporate Manslaughter Charges**; or (d) any **Claim** to the extent coverage is provided under Insuring Agreement, (A) of the Policy;

      (2)     for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA) as amended or any regulations promulgated thereunder or any similar law, federal, state or local law or regulation in connection with any pension, profit sharing or employee benefit program established and/or sponsored by the **Company** in whole or in part for the benefit of the directors, officers or employees of the **Company**;

      .      
© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

(3)        by, on behalf of, or at the direction of the **Company,** or any **Joint Venture** or **Non-Profit Entity** (but with respect to the **Joint Venture** or **Non-Profit Entity,** only against an **Insured Person** for a **Wrongful Act** while acting in his or her capacity as a director, officer, trustee, regent or governor of such **Joint Venture** or **Non-Profit Entity,** or  as a person occupying an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company,** regardless of the name or title by which such position is designated of the **Joint Venture**); however, this Exclusion (A)(3) will not apply to:

        (a)      the extent a **Claim** is brought derivatively by a security holder of the **Company,** or by any **Joint Venture** or **Non-Profit Entity** who, when such **Claim** is made and maintained, is acting independently of, and without the solicitation, assistance, participation or intervention of any **Insured Person** unless such solicitation, assistance, participation or intervention is protected pursuant to Section 806 of the Sarbanes-Oxley Act of 2002 or any similar whistleblower statute**,** or the **Company,** or any **Joint Venture** or **Non-Profit Entity**;

        (b)      the extent a **Claim** or **Interview** is brought by the Bankruptcy Trustee or Examiner of the **Company,** or by  any **Joint Venture** or **Non-Profit Entity** or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company, Joint Venture,** or **Non-Profit Entity**;

        (c)      the extent a **Claim** is brought and maintained in a non-common law jurisdiction outside the United States of America, including its territories and possessions;

        (d)      the extent a **Claim** or **Interview** is brought by a Creditors Committee of the **Company,** or any **Joint Venture** or **Non-Profit Entity** in the event the **Company, Joint Venture,** or **Non-Profit Entity** files for relief under Title 11 of the United States Code;

        (e)      **Defense Expenses** covered under Insuring Agreement (A) or (D).

(B)      No coverage shall be available under this Policy for any **Claim, Interview** or **Investigation Demand** made against an **Insured**:

    (1)      based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration against an **Insured** which was brought prior to the Pending and Prior Litigation Date set forth in ITEM 6 of the Declarations;

    (2)      based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability policy, Directors and Officers liability policy or similar policy;

    (3)      brought about or contributed to in fact by any:

        (a)      deliberately fraudulent or deliberately criminal act or omission or any willful violation of any statute, rule or law by an **Insured**; or

        (b)      profit or remuneration gained by an **Insured** to which such **Insured** is not legally entitled,

        as determined by a final, non-appealable adjudication in the underlying action; however this Exclusion (B)(3) will not apply to: (i) allegations in a **Claim** asserted against an **Insured** under Section 11 and/or 12 of the Securities Act of 1933 as amended arising out of an initial or subsequent public offering of the **Company's** securities (including alleged violations of Section 11 or 12 of the Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933); or (ii) **Defense Expenses** incurred in connection with a

© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

**Claim** alleging violations of section 304 of the Sarbanes-Oxley Act of 2002 or section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act;

No conduct of any **Insured** will be imputed to any other **Insured Person** to determine the application of any of the above EXCLUSIONS. Only the conduct of the chief executive officer and/or chief financial officer of the **Company** will be imputed to the **Company**.

## IV.    LIMIT OF LIABILITY, INDEMNIFICATION AND RETENTIONS

(A)    The Insurer shall pay the amount of **Loss** in excess of the applicable Retention(s) set forth in ITEM 4 of the Declarations up to the Limit of Liability set forth in ITEM 3(B) of the Declarations.

(B)    The amount set forth in ITEM 3(B) of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy whether any **Loss** is covered under one or more Insuring Agreements. Payment of **Loss**, including **Defense Expenses**, by the Insurer shall reduce the Limit of Liability.

(C)    The amount set forth in Item 3(A) of the Declarations shall be the maximum aggregate limit of liability of the Insurer under this Policy resulting from all **Investigation Demands** first made during the **Policy Period**, which amount is part of, and not in addition to, the maximum aggregate Limit of Liability for the Policy as set forth in Item 3(B) of the Declarations.

(D)    With respect to the **Company**'s indemnification of its **Insured Persons**, the certificate of incorporation, charter, by-laws, articles of association, or other organizational documents of the **Parent Company**, each **Subsidiary** and each **Non-Profit Entity** or **Joint Venture**, will be deemed to require indemnification to the **Insured Persons** to the fullest extent permitted by law.

(E)    No Retention will be applicable to **Loss**, including **Defense Expenses**, under Insuring Agreements, (A), (D) or (F).  In the event of financial insolvency of the **Company**, no Retention shall apply.

(F)    In the event the **Company** is obligated under the Policy to pay any Retention, the **Company** may satisfy such Retention from any source. As a precondition to such recognition of the erosion of the Retention from any source other than by payment by the **Company**, the **Company** shall provide the Insurer with written proof, to the Insurer's satisfaction, that payment of such Retention has been made.

(G)    If more than one retention is applicable to different portions of **Loss**, including **Defense Expenses**, the applicable Retention(s) will be applied separately to each portion of such **Loss**, and the sum of such Retention(s) will not exceed the largest applicable Retention set forth in ITEM 4 of the Declarations.

## V.    DEFENSE, SETTLEMENT AND ALLOCATION OF LOSS

(A)    It shall be the duty of the **Insured** and not the duty of the Insurer to defend any **Claim**, **Interview** or **Investigation Demand** under this Policy.

(B)    No **Insured** may incur any **Defense Expenses** in connection with any **Claim, Interview** or **Investigation Demand**, or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably delayed or withheld; however, the **Insured** may settle a **Claim** without such consent, if the total amount of such settlement and **Defense Expenses** does not exceed fifty percent (50%) of the amount of the applicable Retention(s) for such **Claim**.

(C)    Upon the written request of an **Insured**, the Insurer will advance **Defense Expenses** on a current basis, but no less so than quarterly, excess of the applicable Retention, before the disposition of the **Claim, Interview** or **Investigation Demand** for which this Policy provides coverage. As a condition of the advancement of **Defense Expenses**, each **Insured** agrees that if and to the extent it is determined that such **Defense Expenses** are not insured under this Policy, such **Defense Expenses** shall be repaid to the Insurer by the **Insureds**, severally according to their respective interests.

© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

(D)      If both **Loss** covered by this Policy and loss not covered by this Policy are incurred, either because a **Claim, Interview** or **Investigation Demand** made against the **Insured** contains both covered and uncovered matters, or because a **Claim, Interview** or **Investigation Demand** is made against both the **Insured** and others (including the **Company** for **Claims** other than **Securities Claims**) not insured under this Policy, the **Insured** and the Insurer will use their best efforts to determine a fair and appropriate allocation of **Loss** between that portion of **Loss** that is covered under this Policy and that portion of loss that is not covered under this Policy. Additionally, the **Insured** and the Insurer agree that in determining a fair and appropriate allocation of **Loss**, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **Claim, Interview** or **Investigation Demand** by, the **Insured** and others.

(E)      In the event that an agreement cannot be reached between the Insurer and the **Insured** as to an allocation of **Loss**, as described in (D) above, then the Insurer shall advance that portion of **Loss** which the **Insured** and the Insurer agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

## VI.      GENERAL CONDITIONS

(A)   **NOTICE**

(1)      As a condition precedent to any right to payment under this Policy with respect to any **Claim** or **Investigation Demand**, the **Insured** shall give written notice to the Insurer of each **Claim** or **Investigation Demand** as soon as practicable after it is first made, including but not limited to written notice as soon as practicable of each **Claim** or **Investigation Demand** deemed to constitute a single **Claim** or **Investigation Demand** pursuant to Section VI (B) below.  Such notice shall be provided as soon as practicable after the risk management or general counsel departments of the **Parent Company** first becomes aware of such **Claim** or **Investigation Demand**.  In the event that the **Insureds** fail to provide timely notice to the Insurer under this Section VI (A)(1), the Insurer shall not be entitled to deny coverage solely based on such untimely notice unless the Insurer can demonstrate its interests were materially prejudiced by reason of such untimely notice.

(2)      As a condition precedent to any right to payment under this Policy with respect to any **Interview**, the **Insured** may elect to give the Insurer written notice thereof during the **Policy Period** pursuant to Section VI (A)(4) below.

(3)      If, during the **Policy Period,** the **Insured** provides the Insurer with written notice of:

(a)      a specific **Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, and the circumstances by which the **Insured** first became aware of such **Wrongful Act**;

(b)      its receipt of a request to toll or waive a statute of limitations in connection with a **Wrongful Act**; or

(c)      an **Interview** first received during the **Policy Period**,

then any **Claim** or **Investigation Demand** subsequently made arising out of such **Wrongful Act**, request to toll or waive a statute of limitation or **Interview** will be treated as if it had been first made during the **Policy Period**, provided written notice of any subsequent **Claim** or **Investigation Demand** is provided to the Insurer as soon as practicable after such **Claim** or **Investigation Demand** is made.

(4)      All notices under Section VI (A)(1),(2) and (3) above must be sent by:

(a)      first class U.S. mail, overnight mail or the equivalent to the address set forth in ITEM 7 of the Declarations:  Attention Claim Department; or

(b)      electronic mail (email) to the address shown in ITEM 7 of the Declarations.

© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

(B)    **INTERRELATED CLAIMS**

All **Claims, Investigation Demands, Interviews** or requests to toll or waive a statute of limitations, arising from the same **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim, Investigation Demand** or **Interview** and shall be deemed to have been made at the earliest of the time at which the earliest such **Claim, Investigation Demand**, or **Interview** is made or deemed to have been made pursuant to Section VI (A) above.

(C)    **OTHER INSURANCE AND SERVICE IN CONNECTION WITH NON-PROFIT ENTITIES AND JOINT VENTURES**

(1)    Subject to Section IV LIMIT OF LIABILITY INDEMNIFICATION AND RETENTIONS (F), all coverage under this Policy will be specifically excess of and will not contribute with any other valid and collectible management liability insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy, or a personal umbrella policy or personal directorship liability policy purchased by an **Insured Person**. This Policy will not be subject to the terms of any other insurance policy.

(2)    All coverage under this Policy for **Loss** from **Claims** and **Interviews** made against the **Insured Persons** while acting in their capacity as a director, officer, trustee, regent or governor of a **Non-Profit Entity** or persons occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of the **Insured Persons** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture** will be specifically excess of and will not contribute with, any other insurance or indemnification available to such **Insured Person** from such **Non-Profit Entity** or **Joint Venture** by reason of his or her service as such.

(D)    **MERGERS AND ACQUISITIONS (CHANGES IN EXPOSURE OR CONTROL)**

(1)    If during the **Policy Period** the **Company** acquires any entity by merger, consolidation or otherwise such that the entity becomes a **Subsidiary**, coverage shall be provided for any **Loss** involving a **Claim, Interview** or **Investigation Demand** for a **Wrongful Act** occurring after the consummation of the transaction.

(2)    If, however, by reason of the transaction (or series of transactions) described in (D)(1) above, the assets or liabilities so acquired or so assumed as a result of such acquisition, exceed thirty-five percent (35%) of the total assets or liabilities, respectively, of the **Company**, as represented in the **Company's** most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days or to the Expiration Date, whichever occurs first, for any **Loss** involving a **Claim, Interview** or **Investigation Demand** for a **Wrongful Act** that occurred after the transaction has been consummated. Coverage beyond such period will be provided only if:

(a)    the Insurer receives written notice containing full details of the transaction(s); and

(b)    the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate.

(3)    With respect to the acquisition, assumption, merger, consolidation or otherwise of any entity as described in (D)(1) and (2) above, there will be no coverage available to the **Company**, an **Insured Person**,  or to the acquired entity under this Policy for **Claims** made against the **Company** , an **Insured Person**, or the acquired  entity,  for a **Wrongful Act** committed any time during which such entity,  is not an **Insured**.

(4)    If any entity ceases to be a **Subsidiary**, the coverage provided under this Policy shall continue to apply to the **Insured Persons** who, because of their service with such **Subsidiary**, were covered under this Policy but only with respect to a **Claim** for a **Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Company**.

© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

(5)    If during the **Policy Period** there is a **Change In Control**, the coverage provided under this Policy shall continue to apply but only with respect to a **Claim** against an **Insured** for a **Wrongful Act** committed or allegedly committed up to the time of the **Change In Control**; and

    (a)    coverage will cease with respect to any **Claim** for a **Wrongful Act** committed subsequent to the **Change In Control**; and

    (b)    the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a **Change In Control.**

(E)    **CANCELLATION AND RENEWAL OF COVERAGE**

(1)    Except for the nonpayment of premium, as set forth in (E)(2) below, the **Parent Company** has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

(2)    The Insurer may only cancel this Policy for nonpayment of premium. The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Parent Company** and the agent of record for the **Insured,** if applicable.

(3)    The Insurer is under no obligation to renew this Policy upon its expiration. Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Parent Company** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

(F)    **OPTIONAL EXTENSION PERIOD**

(1)    If either the **Parent Company** or the Insurer does not renew this Policy, the **Parent Company** or any **Insured Person** shall be entitled, upon payment of an additional premium set forth in ITEM 5 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any **Claim** or **Investigation Demand** first made or deemed first made during the period of time set forth in ITEM 5 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Act** occurring prior to the Policy Expiration Date. Any such **Claim** or **Investigation Demand** shall be deemed to have been made during the **Policy Period**.

(2)    As a condition precedent to the right to purchase the Optional Extension Period, the total premium for this Policy must have been paid in full. The right of the **Parent Company** or any **Insured Person** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Parent Company** or **Insured Person** advising it wishes to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3)    If the **Parent Company** or **Insured Person** elects to purchase the Optional Extension Period as set forth in (F)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(4)    The purchase of the Optional Extension Period will not in any way increase the Limit of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims**, **Interviews** and **Investigation Demands** made during the **Policy Period.**

© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

(G)    **ASSISTANCE, COOPERATION AND SUBROGATION**

    (1)    The **Insured** agrees to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request in connection with any **Claim**, **Investigation Demand** or **Interview** that is reasonably likely to be covered under this Policy, and further agrees that it will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery against any party.

    (2)    In the event of any payment under this Policy, the Insurer will be subrogated to the extent of such payment of **Loss** to all of the **Insured's** rights of recovery; provided that the Insurer will be subrogated to any **Insured's** potential or actual rights of recovery against any **Insured Person** only in the event that Exclusion (B)(3) of the Policy is applicable to such **Insured Person** in connection with such **Loss**. The **Insured** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in its name, and will provide all other assistance and cooperation which the Insurer may reasonably require. It is understood that the failure of any **Insured Person** to give the Insurer cooperation and information as required in this paragraph shall not impair the rights of the **Company**, or any other **Insured Person** under this Policy.

    (3)    In the event the Insurer recovers amounts it paid under this Policy, the Insurer will reinstate the applicable Limits of Liability of this Policy to the extent of such recovery, less the Insurer's costs incurred in obtaining such recovery.  It is understood and agreed that the Insurer shall have no duty to seek such a recovery.

(H)    **EXHAUSTION**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of **Loss,** the premium as set forth in ITEM 8 of the Declarations will be fully earned and, subject to Section VI General Condition (G)(3), all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind whatsoever under this Policy.

(I)    **REPRESENTATION CLAUSE**

The **Insured** represents that the statements and particulars contained in the **Application** as well as any prior application submitted to the Insurer are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, form the basis of this Policy. No knowledge or information possessed by any **Insured Person** will be imputed to any other **Insured Person**.  With respect to **Claims** made under Insuring Agreement (C) only, no knowledge or information possessed by any **Insured Person** other than a past or present chief executive officer or chief financial officer of the **Parent Company** will be imputed to the **Company**.  In the event that any of the particulars or statements in the **Application** are untrue, this Policy will be void with respect to any **Insured** who knew of such untruth.

This Policy shall not be rescinded by the Insurer; provided that nothing herein shall limit or waive any other rights or remedies available under the Policy or applicable law.

(J)    **ACTION AGAINST THE INSURER, ASSIGNMENT, AND CHANGES TO THE POLICY**

    (1)    No action may be taken against the Insurer unless, as a condition precedent thereto, there has been full compliance with all of the terms and conditions of this Policy.

    (2)    Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the **Insured** to determine its liability, nor may the **Insured** implead the Insurer in any **Claim**.

    (3)    Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

(4)    Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy. The terms, conditions and limitations of this Policy may only be waived or changed by written endorsement.

(K)    **AUTHORIZATION AND NOTICES**

It is understood and agreed that the **Parent Company** will act on behalf of the **Company** and the **Insured Persons** with respect to:

(1)    the payment of the premiums;

(2)    the receiving of any return premiums that may become due under this Policy;

(3)    the giving of all notices to the Insurer as provided herein; and

(4)    the receiving of all notices from the Insurer.

(L)    **PRIORITY OF PAYMENTS**

In the event of **Loss**, including **Defense Expenses**, payable under more than one of the Insuring Agreements of the Policy, then the Insurer shall, to the maximum extent practicable and subject at all times to the Insurer's maximum aggregate Limit of Liability as set forth in ITEM 3 of the Declarations, pay such **Loss** as follows:

(1)    first, the Insurer shall pay that **Loss**, if any, which the Insurer may be liable to pay on behalf of the **Insured Persons** which the **Company** is not permitted nor required to pay on behalf of the **Insured Persons** as indemnification;

(2)    second, the Insurer shall pay that **Loss**, if any, which the Insurer may be liable to pay on behalf of the **Company** which the **Company** is permitted or required to pay on behalf of the **Insured Persons**; and

(3)    third, the Insurer shall make such other payments which the Insurer may be liable to make under Insuring Agreements (C) and/or (F) or otherwise.

(M)    **BANKRUPTCY**

Bankruptcy or insolvency of any **Insured** shall not relieve the Insurer of any of its obligations under this Policy. In such event, including any liquidation or reorganization proceeding of the **Company**, then each **Insured** and the Insurer hereby agree not to oppose or object to any efforts by any **Insured Person** to obtain relief from any stay or injunction.

(N)    **ENTIRE AGREEMENT – WORLDWIDE COVERAGE**

(1)    The **Insured** agrees that the Declarations, Policy, including the endorsements, attachments and the **Application**, shall constitute the entire agreement between the Insurer or any of its agents and the **Insured** relating to this insurance.  The coverage afforded by the Policy shall apply anywhere in the world.

(2)    If the **Parent Company** requests management or directors and officers liability policies for issuance to its foreign **Subsidiaries** in their own countries, the Insurer or a subsidiary or affiliate of XL Group plc shall provide a quote to the **Parent Company** for such policies; provided that the Insurer or a subsidiary or affiliate of XL Group plc can support or facilitate the issuance of the policies to such foreign **Subsidiaries** in their applicable foreign countries. Any coordination of coverage under such policies with coverage under this Policy shall be set forth in an endorsement attached to this Policy.

© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

(O)    **CURRENCY**

All premiums, limits of liability, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America.  If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than the United States of America, payment of covered **Loss** due under this Policy, subject to its terms, conditions and limitations, will be made either in such other currency (at the option of the Insurer and with the agreement of the **Parent Company**), or, in the United States of America dollars at the rate of exchange most recently published in The Wall Street Journal on the date of the Insurer's obligation to pay such **Loss** is established.

© 2014 X.L. America, Inc.  All Rights Reserved May not be copied without permission.

**<u>EXHIBIT C</u>**



Insurer Home Office Address:
175 E. Houston Street, Suite 1300
San Antonio, TX 78205

Insurer Administrative Office:
225 W. Washington Street, 24th Floor
Chicago, IL 60606

# ARGO FLEX-XS[SM]
## FOLLOW FORM EXCESS INSURANCE POLICY

**THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE (UNLESS OTHERWISE PROVIDED) AGAINST THE INSURED DURING THE POLICY PERIOD. DEFENSE COSTS AND CLAIM EXPENSES MAY REDUCE THE LIMIT OF LIABILITY AVAILABLE TO RESPOND TO COVERED LOSS. THE INSURER MAY NOT ASSUME A DUTY TO DEFEND.**

**PLEASE READ THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE PROVIDED WITH YOUR INSURANCE AGENT OR BROKER.**

## DECLARATIONS

**INSURER**

☒ Argonaut Insurance Company

**PRODUCER**

Risk Placement Services
3697 Mt. Diablo Blvd., Suite 300
Lafayette, CA  94549

Policy No.:    MLX 7602807-00

Renewal of Policy No.: New

Terms appearing in **bold** are defined in the Policy.

Item 1.    Named Insured:           Relativity Holdings, LLC
           Principal Address:       9242 Beverly Boulevard, Suite 300
                                    Beverly Hills, CA  90210

To Report a Loss
• Dial toll-free #1 (844)777-8323 or visit our
• Website: https://my.rpsins.com/claimsfnol
• Contact Insurer directly (see policy section)

Item 2.    **Policy Period:**
           From:      August 24, 2017      12:01 a.m. (Local time at the Named Insured's address)
           To:        August 24, 2018      12:01 a.m. (Local time at the Named Insured's address)

Item 3.    Limit of Liability          $2,000,000

Item 4.    **Underlying Insurance** and **Insurance Products:**          See Endorsement No. 1

AG ML 1000  EX (5/10)

RPSEXEC/SC/2017.12.13

Item 5.    Annual Premium              $136,300

Item 6.    Extended Reporting Period:

Additional Premium for the Extended Reporting Period:    200% of Annualized Premium
Length of the Extended Reported Period:    One year(s)

Item 7.    Notices to **Insurer**:

Claims:                                      All Other Notices:
Attn:    ARGO GROUP US                       Attn:    ARGO GROUP US
         Management Liability - Claims                Management Liability - Underwriting
         101 Hudson Street, Suite 1201               101 Hudson Street, Suite 1201
         Jersey City, NJ 07302                        Jersey City, NJ 07302
         (732) 623 8950                               (732) 623 8950
         ArgoMLClaims@argoprous.com

Item 8.    Endorsements Applicable to Coverage at Inception of Policy:

| | |
|---|---|
| AG ML 2040 EX (4 15) | Argo Group US Privacy Policy |
| AG ML 1127 EX (01 15) | Policyholder Disclosure Statement Under the Terrorism Risk Insurance Act |
| AG ML 1192 EX (5 10) | Policyholder Notice-US Dept. of Treasury Office of Foreign Asset Control (OFAC) |
| AG ML 1136 EX (5 10) | Schedule of Underlying Insurance and Insurance Products Endorsement |
| AG ML 1107 EX (5 10) | Prior Acts Exclusion |
| AG ML 1110 EX (5 10) | Pending & Prior Litigation |
| AG ML 1143 EX (5 10) | California Amendatory |
| AG ML 2034 EX (5 10) | State Amendatory Inconsistency |
| Manuscript | Amendment of Section III. Depletion of Underlying Limits |

This Policy shall not be valid unless also signed by another duly authorized representative of the **Insurer**.

Countersigned:                                    By:

Date:      August 30, 2017                        Authorized Representative:

# FOLLOW FORM EXCESS INSURANCE POLICY

**ARGO FLEX-XS**<sup>SM</sup>



In consideration of the payment of the premium and in reliance upon all information provided and all statements made in the application(s) for this Policy and the **Underlying Insurance**, the **Insurer** and the **Insured(s)** agree as follows:

## I.    INSURING AGREEMENT

With respect to each **Insurance Product**, this insurance shall apply in excess of all applicable **Underlying Insurance** for **Material Events**.  Except as otherwise provided in this Policy, the insurance afforded hereunder shall apply in conformance with the provisions of the **Followed Policy**, to the extent that coverage is not further modified or restricted by any other **Underlying Insurance**.  In no event shall this Policy provide broader coverage than the most restrictive policy of **Underlying Insurance**.

The insurance afforded under this Policy shall not apply unless and until all **Underlying Insurance** with respect to an applicable **Insurance Product** has been exhausted by actual payment of **Loss** thereunder.

## II.    DEFINITIONS

**A.**    "**Claim**" has the same meaning as attributed to that term in the **Followed Policy**.

**B.**    "**DIC Insurer**" means an insurer who drops down and pays **Loss,** pursuant to an excess difference in conditions policy issued specifically to be excess of this Policy that is not paid by **Underlying Insurance** pursuant to an excess difference in conditions policy written specifically in excess of this Policy.  The policy written by the **DIC Insurer** is not part of  the **Underlying Insurance**.

**C.**    "**Followed Policy**" means the specific policy identified as the "**Followed Policy**" under the applicable **Insurance Product** identified in Endorsement No. 1. attached to this Policy.

**D.**    "**Insurance Product**" means each separate type of insurance identified as an "**Insurance Product**" in Endorsement No. 1, attached to this Policy.

**E.**    "**Insured(s)**" means all persons or entities entitled to coverage under the **Followed Policy**.

**F.**    "**Insurer**" means the insurer identified in the Declarations.

**G.**    "**Loss**" shall have the same meaning as attributed to that term in the **Followed Policy**.

**H.**    "**Material Events**" means:

AG ML 1103 EX (1/14)

       1.     a **Loss** first discovered during the **Policy Period** by any **Insured(s)** in connection with any **Underlying Insurance** that is a bond; or

       2.     a **Claim** first made during the **Policy Period** against an **Insured** in connection with any other **Underlying Insurance**, whether written on a "claims made," "occurrence," or other basis.

**I.** "**Policy Period**" means the period from the inception date of this Policy to the expiration date of this Policy as stated in Item 2. of the Declarations, or its earlier cancellation or termination date.

**J.** "**Underlying Insurance**" means each insurance policy which constitutes all or part of an **Insurance Product**, as scheduled in Endorsement No. 1, attached to this Policy.

**K.** "**Underlying Limits**" means the aggregate sum of all limits of liability of all **Underlying Insurance** with respect to each **Insurance Product** scheduled in Endorsement No. 1, attached to this Policy, in addition to the retention or deductible that is applicable to the **Followed Policy** for such **Insurance Product**.

For the purposes of these Definitions, the singular includes the plural and the plural includes the singular, unless otherwise indicated.

## III. DEPLETION OF UNDERLYING LIMITS

**A.** If the **Underlying Limits** are partially exhausted solely as the result of actual payment by the **Underlying Insurance**, this Policy shall continue to apply as excess insurance over the remaining **Underlying Limits**.

**B.** If the **Underlying Limits** are completely exhausted solely as the result of actual payment by the **Underlying Insurance**, or a **DIC Insurer**, this Policy shall apply as primary insurance with respect to the applicable **Insurance Product(s)**, and be subject to the application of any retention or deductible applicable under the **Followed Policy(ies)**.

**C.** If any **Underlying Insurance provides for** any coverage subject to a sublimit of liability, this Policy shall not provide such coverage. However, this Policy shall recognize any reduction of the **Underlying Limits** by any payment subject to such sublimit.

## IV. LIMIT OF LIABILITY

The Limit of Liability specified in Item 3. of the Declarations shall be the **Insurer's** maximum aggregate limit of liability, and shall be the **Insurer's** maximum amount payable under this Policy for all **Loss** resulting from all **Material Events**.

## V. NOTICES

The **Insured(s)** shall give notice to the **Insurer** of any **Material Events** contemporaneous with and in conformance with the notice provisions of the **Followed Policy**, except that such notice shall be delivered to the address specified in Item 7. of the Declarations.

The Declarations, the completed and signed application for this Policy, all materials submitted in support of the application or made a part of the application and this policy form constitute the Policy.

## VI. RIGHTS

The **Insurer** shall have the same rights, privileges and protections afforded in any of the

AG ML 1103 EX (1/14)

**Underlying Insurance**.  The **Insurer** shall also have the right to participate in the investigation, settlement and defense of any **Material Events** noticed under this Policy, even if the **Underlying Limits** have not been exhausted.  The **Insured(s)** shall give the **Insurer** all information and cooperation as the **Insurer** may reasonably request.

**VII.**    **ALTERATION**

No alteration, change or modification to this Policy shall be effective unless made by endorsement signed by an authorized representative of the **Insurer**.

By:

_____          _____
President                                                     Secretary

AG ML 1103 EX (1/14)



# Privacy Policy

Argo Group US, Inc. ("Argo Group") recognizes the importance of maintaining the privacy of our customers and the confidentiality of each individual's nonpublic personal information, including Social Security numbers. We take seriously the responsibility that accompanies our collection of nonpublic personal information, including Social Security numbers. Accordingly, Argo's corporate policy is to protect the privacy and confidentiality of our consumers and their nonpublic personal information as required by law.

## Information Collection and Use

In order to conveniently and effectively provide and service the insurance products we sell, we may collect and use Social Security numbers and other nonpublic personal information. As such, this policy does not prohibit the collection or use of Social Security numbers and nonpublic personal information where legally authorized and/or required. This policy complies with the requirements of the Gramm-Leach-Bliley Act (GLBA) and applicable federal and state laws and regulations implementing the act. Such laws impose certain obligations upon third persons and organizations with which we share nonpublic personal information of our consumers, customers, former customers, or claimants. Accordingly, we prohibit the unauthorized disclosure of Social Security numbers and other protected nonpublic personal information, except as legally required or authorized.

## Information Sharing and Disclosure

Argo Group does not rent, sell or share your personally identifiable information with nonaffiliated third parties. Argo Group may, however, share personally identifiable information with third-party contractors. These third-party contractors are prohibited from using the information for purposes other than performing services for Argo Group. Argo Group may disclose your information to third parties when obligated to do so by law and to investigate, prevent, or take action regarding suspected or actual prohibited activities, including but not limited to fraud and situations involving the security of our operations and employees.

Finally, Argo Group may transfer information, including any personally identifiable information, to a successor entity in connection with a corporate merger, consolidation, sale of all or a portion of its assets, bankruptcy, or other corporate change.

## Security

In order to protect your nonpublic personal information, we limit access to nonpublic personal information by only allowing authorized personnel to have access to such information. Furthermore, we maintain physical, electronic and procedural security protections to safeguard the nonpublic personal information in our records. Documents that contain an individual's protected information are destroyed before disposal; this destruction process includes the shredding of print and disposable media and deletion of electronic media. Argo Group has security measures in place to protect the loss, misuse and alteration of the information under our control. Our hardware infrastructure is housed in a controlled access facility that restricts access to authorized individuals. The network infrastructure is protected by a firewall and traffic is monitored and logged both on the firewall and servers. Sensitive administrative activities are carried out over secure, encrypted links between our offices and hosting facility. Administrative

access is limited not only to authorized employees but also to specific remote administration protocols and IP addresses. All employees with access to personally identifiable information have been advised of Argo Group's security policies and practices. Argo Group will continue to conduct internal audits of its security systems and make all necessary enhancements to ensure the safety of the website and its users. No method of transmission over the Internet or method of electronic storage is 100% secure; therefore, while Argo Group uses commercially acceptable means to protect your information, we cannot guarantee absolute security.

Any Argo Group employee who becomes aware of the inappropriate use or disclosure of Social Security numbers and other protected nonpublic personal information is expected to immediately report such behavior to the General Counsel for further action.

**Corrected/Updated Information**

This policy applies to certain insureds of Argo Group, including but not limited to worker's compensation claimants.  If you have any questions about this Privacy Policy, please contact:

General Counsel
Argo Group US, Inc.
P.O. Box 469011
San Antonio, Texas 78246
(210) 321-8400

*Note: Argo Group is the parent of Argonaut Insurance Company; Argonaut-Southwest Insurance Company; Argonaut-Midwest Insurance Company; Argonaut Great Central Insurance Company; Argonaut Limited Risk Insurance Company; ARIS Title Insurance Corporation; Select Markets Insurance Company; Colony Insurance Company; Colony Specialty Insurance Company; Peleus Insurance Company (fka Colony National Insurance Company); Rockwood Casualty Insurance Company; Somerset Casualty Insurance Company; Grocers Insurance Agency, Inc.; Central Insurance Management, Inc.; Alteris Insurance Services, Inc.; Trident Insurance Services, LLC; Commercial Deposit Insurance Agency, Inc.; Sonoma Risk Management, LLC; John Sutak Insurance Brokers, Inc.; Colony Management Services, Inc.; Argonaut Management Services, Inc.; and Argonaut Claims Management, LLC.  This Privacy Policy applies to all companies and business produced or underwritten within Argo Group.

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM**
**INSURANCE COVERAGE**

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Insurance Coverage**

_____X_____     I hereby elect to purchase terrorism coverage for a prospective premium of
$ included .

_____     I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism.

| | |
|---|---|
| _____ | Relativity Holdings LLC _____ |
| Policyholder/Applicant's Signature | Named Insured |
| _____ | Argonaut Insurance Company _____ |
| Print Name | Insurance Company |
| _____ | MLX 7602807-00 _____ |
| Title | Policy Number |
| _____ | Risk Placement Services _____ |
| Date | Producer |

© 2015 National Association of Insurance Commissioners

# POLICYHOLDER NOTICE
# U.S. DEPARTMENT OF TREASURY OFFICE OF FOREIGN ASSET CONTROL
# ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of this Policy.  Please read the Policy and review the Declarations page for complete information on the coverage provided by it.

This Policyholder Notice provides information concerning the potential impact on the coverage provided under this Policy due to directives issued by OFAC.  Please read this Notice carefully.  Please also review any economic and trade sanctions exclusion that may be attached to the Policy.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous"

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons".  This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that any Insured, or any other person or entity claiming the benefits of this Policy, has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this Policy shall be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payments also apply.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF UNDERLYING INSURANCE AND INSURANCE PRODUCTS ENDORSEMENT

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the Schedule of **Underlying Insurance** and **Insurance Products** is as follows:

**A.**    **Insurance Product: Excess Directors & Officers Liability**

**1.**    **Followed Policy**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| XL Specialty Insurance Company | ELU151686-17 | $5,000,000 | 8/24/2017 – 8/24/2018 |

**2.**    Other **Underlying Insurance**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| XL Specialty Insurance Company | ELU151686-17 | $5,000,000 | 8/24/2017 – 8/24/2018 |

**B.**    **Insurance Product: Not Applicable**

**1.**    **Followed Policy**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|

**2.**    Other **Underlying Insurance**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective   August 24, 2017     Policy No.   MLX 7602807-00  Endorsement No.     1

Insured     Relativity Holdings, LLC                                           Premium

Insurance Company     Argonaut Insurance Company     Authorized Signature

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRIOR ACTS EXCLUSION

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the Policy is amended as follows:

The **Insurer** shall not be liable to make payment for **Loss**, in connection with any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

1.      any act, omission, fact, circumstance, situation, transaction, and/or event which occurred, or is alleged to have occurred, in whole or in part, prior to August 24, 2017 including any act, omission, fact, circumstance, situation, transaction, and/or event which would otherwise be considered a **Material Events**; or

2.      any other act, omission, fact, circumstance, situation, transaction, and/or event, whenever occurring, which together with an act, omission, fact, circumstance, situation, transaction, and/or event described in 1. above are causally or logically interrelated by a common nexus.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective    August 24, 2017    Policy No.    MLX 7602807-00   Endorsement No.    2

Insured    Relativity Holdings, LLC    Premium

Insurance Company    Argonaut Insurance Company    Authorized Signature

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENDING & PRIOR LITIGATION EXCLUSION
_____

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the Policy is amended as follows:

The **Insurer** shall not be liable to make any payment for Loss, in connection with any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Material Events**, underlying or alleged in any prior and/or pending litigation, or administrative or regulatory proceeding which was commenced prior to <u>August 24, 2017</u>.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective   <u>August 24, 2017</u>   Policy No.   <u>MLX 7602807-00</u>  Endorsement No.   <u>3</u>

Insured   <u>Relativity Holdings, LLC</u>   Premium   _____

Insurance Company   <u>Argonaut Insurance Company</u>   Authorized Signature   _____

AG ML 1110 EX (5/10)                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA AMENDATORY ENDORSEMENT

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the Policy is amended as follows:

1.    The Policy is amended by the addition of the following:

   **VIII.    CANCELLATION, NONRENEWAL AND RENEWAL**

   **A.**    The **Insurer** shall only cancel this Policy for nonpayment of premium. The **Insurer** shall mail or deliver written notice of cancellation to the Named **Insured** at the address on the Policy no less than ten (10) days before the effective date of cancellation.  The notice of cancellation shall also be sent to the producer of record, if applicable, provided that the producer of record is not an employee of the **Insurer**.  The notice shall state the effective date and reason for cancellation.

   **B.**    If the **Insurer** decides not to renew this Policy or to condition renewal upon a reduction of the Policy's Limit of Liability, an elimination of coverage, an increase in retention or deductible or an increase of more than twenty five percent (25%) in the rate upon which the premium is based, the **Insurer** shall mail or deliver written notice to the Named **Insured** at the address on the Policy and the producer of record, if applicable, at least sixty (60) days, but not more than one hundred twenty (120) days prior to the expiration of the **Policy Period**.  The notice shall state the reason for nonrenewal.

2.    The Policy is further amended by the addition of the following:

   **IX.    BANKRUPTCY AND INSOLVENCY**

   Solely with respect to liability coverage under this Policy, the bankruptcy or insolvency of the **Insured** shall not relieve the **Insurer** of its obligations, nor deprive the **Insurer** of its rights or defenses under the Policy.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective    August 24, 2017    Policy No.    MLX 7602807-00    Endorsement No.    4

Insured    Relativity Holdings, LLC    Premium

Insurance Company    Argonaut Insurance Company    Authorized Signature

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## STATE AMENDATORY INCONSISTENCY

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that in the event there is an inconsistency between a state amendatory endorsement attached to this Policy and any term or condition of this Policy, then where permitted by applicable law, the **Insurer** shall apply those terms and conditions of either the amendatory endorsement or the Policy that are more favorable to the **Insured(s)**.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective   August 24, 2017      Policy No.   MLX 7602807-00   Endorsement No.      5

Insured    Relativity Holdings, LLC                                Premium

Insurance Company    Argonaut Insurance Company       Authorized Signature

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF SECTION III. DEPLETION OF UNDERLYING LIMITS

_____

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that Section **III. DEPLETION OF UNDERLYING LIMITS** is deleted in its entirety and is replaced by the following:

**III.    DEPLETION OF UNDERLYING LIMITS**

**A.**  If the **Underlying Limits** are partially exhausted solely as a result of actual payment by the **Underlying Insurance,** this Policy shall continue to apply as excess insurance over the remaining **Underlying Limits**.  For the purposes of this paragraph, payment by the **Insured(s),** any **DIC Insurer,** or any other source, of amounts covered under the **Underlying Insurance** and due to the **Insured(s)** under the **Underlying Insurance** shall be deemed to exhaust the **Underlying Limits** to the extent of any such payments.

**B.**  If the **Underlying Limits** are completely exhausted solely as the result of actual payment by the **Underlying Insurance**, this Policy shall apply as primary insurance with respect to the applicable **Insurance Product(s)**, and be subject to the application of any retention or deductible applicable under the **Followed Policy(ies)**. For the purposes of this paragraph, payment by the **Insured(s),** any **DIC Insurer** or any other source, of amounts covered under the **Underlying Insurance** and due to the **Insured(s)** under the **Underlying Insurance** shall be deemed to exhaust the **Underlying Limits** to the extent of any such payments.

**C.**  If any **Underlying Insurance** grants any coverage subject to a sublimit of liability, this Policy shall not offer such coverage.  However, this Policy shall recognize any reduction of the **Underlying Limits** by any payment subject to such sublimit.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective    August 24, 2017    Policy No.    MLX 7602807-00    Endorsement No.    6

Insured    Relativity Holdings, LLC    Premium

Insurance Company    Argonaut Insurance Company    Authorized Signature

Manuscript Endorsement

**<u>EXHIBIT D</u>**

**BR 80 179 08 16**

**Endorsement No.:** <n>                                        **Effective:** <Endt Effective Date>
**Named Insured:** <Insured Name>                   12:01 A.M. Standard Time
**Policy No.:** <Policy No>                                   **Insurer:** <Insurer>
**Policy Form: EXECUTIVE AND CORPORATE SECURITIES LIABILITY**

# CONVERT TO RUN-OFF ENDORSEMENT

In consideration of an additional premium of $charged (the "Run-off Premium"):

(1)    The amount of unearned premium for the Original Policy Period, as defined below, is $

(2)    Item 2 of the Declarations is amended to read in its entirety as follows:

   "Item 2. Policy Period:    From:    to:
            At 12:01 AM Standard Time at your Mailing Address Shown Above"

(3)    It is expressly understood and agreed that the maximum aggregate Limit of Liability set forth in Item 3 of
       the Declarations shall continue to be the maximum aggregate Limit of Liability for the entire Policy Period,
       as amended in paragraph (2) above.

(4)    Item 5 of the Declarations is deleted in its entirety.

(5)    Item 8 of the Declarations is amended to read in its entirety as follows:

   "Item 8. Premium:
            Original Premium                     $
            Run-off Premium                      $
            Unearned Premium                     $
            Taxes, Surcharges or Fees            $0.00
            Total Policy Premium                 $

(6)    No coverage will be available under this Policy for any Claim based upon, arising out of, directly or
       indirectly resulting from, in consequence of, or in any way involving any a Wrongful Act committed or
       allegedly committed on or after <fill-in> or with respect to any Interview or Investigation demand in
       connection with any act, fact, circumstance, transaction, or event taking place on or after <fill-in>.

(7)    Section VI General Conditions (D)(5) of the Policy is deleted in its entirety.

(8)    Section VI General Conditions (E)(1) of the Policy is amended to read in its entirety as follows:

   "(1)    Except for the nonpayment of premium, as set forth in (E)(2) below, the Parent Company has the
           exclusive right to cancel this Policy.  Cancellation may be effected by mailing to the Insurer
           written notice stating when such cancellation shall be effective, provided the date of cancellation
           is not later than the Expiration Date set forth in ITEM 2 of the Declarations."

(9)    Section VI General Conditions (F) of the Policy is deleted in its entirety.  All other references in the Policy
       to the Optional Extension Period are deleted.

(10)   The entire premium for this Policy shall as set forth in paragraph (5) above be deemed fully earned as of
       <fill-in>.

(11)   Section VI General Conditions (A)(3) of the Policy is deleted in its entirety.

(12)   Solely for the purposes of this endorsement, the term Original Policy Period means the period of time
       from <fill-in original policy period>.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2016 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.