**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**RELATIVITY MEDIA, LLC,** *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 18-11358 (MEW)<br><br>(Jointly Administered) |

**BENCH DECISION REGARDING APPLICATION FOR PERMISSION**
**TO RETAIN WINSTON & STRAWN LLP AND OBJECTIONS THERETO**

A P P E A R A N C E S:

WINSTON & STRAWN LLP
*Proposed Attorneys for Debtors*
200 Park Avenue
New York, NY 10166
  By:  Daniel N. Guisbond, Esq.
       Carrie V. Hardman, Esq.
       Thomas Patrick Lane, Esq. (telephonically)

    - and -

33 West Wacker Drive
Chicago, IL 60601
  By:  Daniel J. McGuire, Esq.

PATTERSON BELKNAP WEBB & TYLER LLP
*Attorneys for Winston & Strawn LLP*
1133 Avenue of the Americas
New York, NY 10036
  By:  Daniel A. Lowenthal, Esq.
       Brian P. Guiney, Esq.

PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL
*Attorneys for Winston & Strawn LLP*
1200 North Broom Street
Wilmington, DE 19806
  By:  John C. Phillips, Jr., Esq.

1

KLEE, TUCHIN, BOGDANOFF & STERN LLP
*Attorneys for Netflix, Inc.*
1999 Avenue of the Stars, Thirty-Ninth Floor
Los Angeles, CA 90067
  By:  Robert J. Pfister, Esq.
       Thomas E. Patterson, Esq.

ROBINS KAPLAN LLP
*Attorneys for Official Creditors' Committee*
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
  By:  Scott F. Gautier, Esq.

RIMON, P.C.
*Attorneys for Pure Flix Entertainment*
1 Embarcadero Center, Suite 400
San Francisco, CA 94111
  By:  Lillian Stenfeldt, Esq.

UNITED STATES DEPARTMENT OF JUSTICE,
OFFICE OF THE UNITED STATES TRUSTEE
201 Varick Street, Suite 1006
New York, NY 10014
  By:  Greg M. Zipes, Esq.

**MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

      We are here in the case of Relativity Media, LLC, et al. Before the Court is the application by the debtors for entry of an order authorizing the retention of Winston & Strawn LLP as attorneys for the debtors pursuant to section 327(a) of the Bankruptcy Code.

      The debtors' application includes a declaration by an attorney from the Winston & Strawn firm that discloses the fact that Winston & Strawn, at the time of that declaration, was acting as counsel for Netflix, Inc. and for an affiliate of Netflix, Inc. in a patent litigation pending in the United States District Court for the District of Delaware. That patent litigation is captioned *Realtime Adaptive Streaming LLC v. Netflix, Inc., et al.*, and it is case number 17-

1692. Winston & Strawn's representation of Netflix in that matter precedes its representation of the debtors.

The debtors presently are engaged in disputes with Netflix that are scheduled to go to trial in mid-July. Those disputes relate to Netflix's allegations that an important distribution contract with the debtors allegedly was breached prior to the commencement of these bankruptcy cases. The debtors believe the Netflix contract has substantial value, and they hope to assume the Netflix distribution contract and to assign it to a buyer as part of a sale of assets.

Two objections to the retention application have been filed. Netflix filed an objection dated June 11, 2018, which is docket number 242. Netflix argues that Winston & Strawn's representation of the Relativity debtors in disputes with Netflix would violate the professional obligations that Winston & Strawn owed to Netflix. Netflix represented that certain ethical issues would need to be pursued in California and not in this Court. However, it asked the Court to consider whether these matters "should cause this Court to decline to approve" the Winston & Strawn retention "insofar as it seeks to be adverse to Netflix, and require the appointment of special counsel to deal with matters as to which the estate is directly adverse to Netflix."

The Office of the United States Trustee has also filed an objection dated July 2, 2018, which is docket number 296. The United States Trustee has argued that Winston & Strawn's concurrent representation of Netflix and of the debtors creates an actual conflict of interest that bars the retention of Winston & Strawn under section 327. Whereas Netflix sought to bar the retention solely to the extent of disputes against Netflix, the United States Trustee has sought to bar the retention in its entirety.

The parties have filed many replies, supplemental statements, declarations, exhibits, and other papers with respect to these issues. I am not going to even attempt to list them all here, but I have read them all and considered them all.

Winston & Strawn has argued that Netflix agreed in advance to waive conflicts and to permit Winston & Strawn to represent other clients in unrelated litigation and transactional matters that might be adverse to Netflix. It has also argued that it has withdrawn from its representation of Netflix in Delaware, and that I should therefore consider Netflix, at this point, to be just a former client of Winston & Strawn.

Netflix has argued that it did not agree to an advance waiver with respect to the *Realtime* litigation in Delaware, and that in any event such advance waivers are unenforceable under California law. It also argues that Winston & Strawn's purported withdrawals as Netflix's counsel in Delaware are not yet effective and that, in any event, such withdrawals would not cure the violations of the duty of loyalty that Winston & Strawn owes to Netflix. Netflix has cited to the so-called "hot potato" rule that many courts have applied, in which counsel who face conflicts based on concurrent representations are not permitted to solve the problem by just dropping one of the two clients. *See, e.g., Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 209 (S.D.N.Y. 2009). The theory of the hot potato rule is that the law firm owes a duty of loyalty to its client, and dropping the client so that the law firm can be adverse to the client is just as much a breach of that duty of loyalty as if the law firm were to be adverse to a current client. *See, e.g., Chemical Bank v. Affiliated FM Insurance Co.*, 1994 U.S. Dist. LEXIS 5120, at *11 (S.D.N.Y. Apr. 20, 1994).

I read and considered all the papers, as I said, and I have heard the argument of the parties this morning and have considered the evidence that was offered. There are two issues

4

that have been presented today and that I will discuss separately. One issue is whether Winston & Strawn holds an interest that is adverse to the debtors, and that, from the perspective of the debtors and the estate, should bar Winston & Strawn's retention under section 327. The other issue is whether Winston & Strawn owes duties to Netflix that would be violated if Winston & Strawn were to continue to represent the debtors in their disputes with Netflix. A question that is related to the second question is the extent to which I ought to consider Winston & Strawn's duties to Netflix in the context of the section 327 application, or whether I instead should require a separate disqualification motion by Netflix following a more general retention of Winston & Strawn, and should defer consideration of duties owed to Netflix unless and until such a motion is filed.

I will start with the section 327 issues. Section 327(a) of the Bankruptcy Code states that a debtor may employ attorneys "that do not hold or represent an interest adverse to the estate." Section 327(c) goes on to make clear that in a chapter 11 case a law firm is not disqualified "solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States Trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest."

The case law that has attempted to define the standards set forth in Sections 327(a) and 327(c), frankly, is not necessarily all that consistent. For example, some decisions have held that the "adverse interest" test "is objective and excludes any interest or relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." *See, e.g., In re Granite Partners*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998). I will note that although that language appears in the *Granite Partners* decision, the actual conflicts that were at issue in that case were by no means "faint colors" on the law firm's

5

independence. Instead, the conflicts were deep and undisclosed conflicts that the law firm later admitted would bar it from being adverse to a brokerage firm that the law firm had been hired to investigate.

One could argue that the mere representation of a client who is also a creditor in a chapter 11 case is a "faint color" on the law firm's independence. If so, that would automatically disqualify counsel who has a concurrent representation. There are some decisions that suggest this may be the proper result. However, if the adverse interest test were to be applied in this way, it would effectively negate the clear language of section 327(c). By its terms, section 327(c) says that representing a creditor is not inherently disabling, unless there is an actual conflict of interest. Other decisions have held that there is no "actual" conflict of interest under section 327(c) unless there is "an active competition between two interests, in which one interest can only be served at the expense of the other." *See, e.g., In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 315 (Bankr. S.D.N.Y. 2016).

As noted, the United States Trustee contends that the Winston & Strawn representation of Netflix creates such a pervasive actual conflict that it ought to bar the Winston & Strawn retention in its entirety. There certainly may be cases where there is enough of a conflict to bar a retention, but I do not find it to be the case here. The Netflix contract undoubtedly is important to Relativity, but there are other assets to be sold as well. There is also financing to be finalized, a sale process to complete, a claims process to administer, and all the other things that Chapter 11 requires. There is nothing about those general tasks that is adverse to Netflix at all and no respect in which Winston & Strawn's independence or loyalty would be altered in performance of that work as a result of its separate work for Netflix in the Delaware patent litigation. I therefore do not believe that Winston & Strawn's representation of Netflix in the Delaware

6

patent litigation, whether that representation is continuing or not, is proper grounds for a general disqualification of Winston & Strawn from acting in any capacity as counsel to the debtors.

Netflix has raised the separate question, however, of whether the retention ought to be limited to matters that are not adverse to Netflix, and whether the retention of Winston & Strawn should be effective only upon the agreement that separate counsel will be retained to handle disputes with Netflix.

To some extent, both Netflix and the United States Trustee have argued that it would be contrary to the debtors' interests to have Winston & Strawn represent them, because Winston & Strawn might go easy on Netflix to avoid irritating a current client. There is certainly no evidence of any actual restraint by Winston & Strawn in this regard. It is actively seeking to divorce itself from representation of Netflix, and its filings make quite clear that it does not mind ruffling Netflix's feathers, as I said earlier, and, frankly, does not seem to care what Netflix thinks of it at this point.

Also, from the point of view of the debtors, the point of ensuring a firm's loyalty is to ensure effective representation of a debtor. If Winston & Strawn's representation is not approved, it is quite clear the debtors will be prejudiced. It will affect their ability to prosecute their disputes with Netflix on the previously approved schedule. It would be odd indeed, as I said earlier today, if we were to allow a theoretical concern over the effectiveness of counsel in pursuing a matter for a debtor to require a ruling that would guarantee a result that would impair the debtors' pursuit of that same matter. So to the extent people have argued that the Netflix conflict is a conflict that will impair the representation of the debtors in a way that is against the debtors' interest, in this particular context that does not seem very convincing.

However, there are other points to consider. Netflix argued in its objection, in effect, that it would not be in the debtors' interest to hire Winston & Strawn for this purpose if Winston & Strawn would be incapable of doing the work because of the conflict issues. Netflix has also argued that its own interests would be impaired if Winston & Strawn were to represent the Relativity debtors in litigation against Netflix.

As I noted this morning, Netflix has not made a disqualification motion, and there was some question in my mind as to the extent to which I ought to treat Netflix's objections as a disqualification motion. Winston & Strawn and other parties-in-interest have argued today that I should only consider the question of whether Winston & Strawn may be retained generally under section 327(a) and not the separate question of whether it should be barred from suing Netflix. They argue that the issue of whether Winston & Strawn may sue Netflix can and should be raised only through a disqualification motion that might raise different issues that have not yet been briefed by the parties.

Obviously I am concerned to ensure that no party is surprised and that parties have the opportunity to address relevant issues fully. However, it was quite clear from the outset that what Netflix has asked for is a ruling that Winston & Strawn can handle some matters for Relativity but not the litigation against Netflix. Netflix also has repeatedly argued over the course of the past few weeks that Winston & Strawn's pursuit of the litigation against Netflix is in violation of Netflix's rights. It is also certainly the case that at least most, if not all, of the issues relevant to disqualification have been briefed by the parties, including the extent to which Netflix arguably has waived conflicts and the extent to which the so-called "hot potato" rule would bar the debtors from curing their problems by just withdrawing from their representation of Netflix in the Delaware patent case.

I asked Winston & Strawn's counsel earlier this afternoon just what issues would be briefed on a disqualification motion that have not already been fairly posed by Netflix's objection and that have not already been briefed by the parties. He was unable to give me a specific example, though he said he would want to look at the disqualification case law to be sure.

To the extent issues have been briefed, I believe it is appropriate for me to rule on them now. The trial is approaching, and the parties are entitled to as much clarity as I can provide to them on the relevant issues before the litigation proceeds any further.

First, it is quite clear to me from the record that Netflix did not sit on its rights. It raised the potential conflict from the very first moment, prior to bankruptcy, when it received a mailing that suggested to it that Winston & Strawn might represent Relativity. It raised the potential conflict again at the very outset of this case. In addition, the deadline for objections to the Winston & Strawn retention was June 21, but Netflix filed its objection ten days earlier, on June 11th, so as to flag the relevant issues at as early a time as possible. The retention application was scheduled for hearing on June 28th, but the debtors and the United States Trustee agreed to postpone the application. Netflix promptly filed a statement, which is docket number 284, stating that Netflix had not been asked to consent to the adjournment and that it believed it was being prejudiced by the continuation of litigation without a resolution of the retention objection. Netflix raised the matter again last week, when it argued that the issue ought to be resolved before depositions of Netflix officers would begin. In response, I moved the adjourned hearing forward to today.

Second, it seems quite clear to me that in the absence of an effective waiver, a lawyer is not permitted to sue a current client, even if the litigation against a client is on matters that are

9

unrelated to the other work that the lawyer is doing for that client. Winston & Strawn has not disputed this general principle. It has argued instead that it has obtained a general waiver of conflicts from Netflix and also that it has withdrawn from its work for Netflix so that Netflix is now just a former client.

As to the withdrawals: there has been a lot of argument over whether the withdrawals are already effective or whether further proceedings are needed. I do not need to resolve those issues. While the withdrawals might lessen any concerns under section 327(a), they really do not solve the problem that Netflix has posed as to disqualification. Even if the withdrawals were effective, the cases that apply the hot potato rule make clear that where a lawyer has sued a client in violation of the duties owed to that client, the lawyer cannot solve the problem by withdrawing from its representation of that client. The cases cited by Netflix on this issue are on point.

Winston & Strawn has argued that it is entitled to withdraw from its representation of Netflix because Netflix has, in effect, said nasty things about it. But the only nasty things Netflix has said is that Winston & Strawn violated its duties to Netflix. If that enough were grounds to drop the representation, then the ethical rules and the "hot potato" case law would mean nothing.

Winston & Strawn has also argued that the conflict here was somehow thrust upon Winston & Strawn and was unforeseeable. Frankly, that is absurd. Either the disputes with Netflix were known at the time of Winston & Strawn's hiring by Relativity, or they were apparent long ago and prior to the bankruptcy filing, when Netflix asserted that Relativity was in default under the distribution agreement. Certainly there was knowledge and plenty of time to deal with the issue, if necessary, through the hiring of other counsel.

As to the waiver: Winston & Strawn has argued that Netflix waived conflicts generally in a series of engagement letters and emails. More particularly, Winston & Strawn has provided a redacted copy of a letter dated February 26, 2012, under which Netflix retained Winston & Strawn in connection with a particular matter. The identity of that matter is not clear from the redacted letter, though there seems to be no dispute that it has ended. The letter stated that, "as a condition to Winston & Strawn LLP's undertaking to represent Netflix, Inc. in this matter," Netflix agreed that Winston & Strawn could, "in the future", represent other clients "in any matter, including but not limited to litigation, directly adverse to Netflix, Inc. which is not the same as or substantially related to this matter," and that Netflix thereby waived any conflicts of interest from such representations.

Winston & Strawn has also provided a redacted copy of another letter dated March 18, 2015. This retention related to unspecified advertising and promotional matters. The letter stated that, "as a condition to Winston & Strawn LLP's undertaking to represent Netflix in advertising and promotional matters," Netflix would agree that Winston & Strawn could represent other clients in litigation or other matters adverse to Netflix.

Apparently, there is no separate engagement letter for the Delaware patent litigation. The parties have submitted email correspondence in which Netflix, on December 7, 2017, asked Winston & Strawn to send a standard retainer for the new matter. Brian Heidelberger of Winston & Strawn responded that same day that "[w]e already have an engagement letter on file with Netflix so I'll make an addendum which will make it consistent with the proposal we submitted." However, apparently nothing further was sent, at least not so far as the record before me indicates.

18-11358-mew    Doc 312    Filed 07/06/18    Entered 07/06/18 16:59:05    Main Document
Pg 12 of 14


In January 2018 Netflix asked Winston & Strawn to confirm that it would represent an affiliate named Netflix Streaming Services, Inc. on the same terms as its representation of Netflix, Inc. in the patent litigation. Winston & Strawn responded, "confirmed and agreed." That begs the question as to just what the agreement was that governed the retention in the Delaware patent litigation.

I agree with Netflix that this correspondence is not effective to constitute an advance waiver of conflicts that binds Netflix today. The letters from 2012 and 2015 were expressly in consideration of Winston & Strawn's agreement to represent Netflix in the particular matters that were the subject of those letters. No similar agreement was ever signed as to the Delaware patent litigation. It is not fair to interpret the 2012 and 2015 letters as though they are waivers, not only by virtue of the specific matters that were the subjects of those letters, but also were waivers by virtue of any other matters for which Winston & Strawn might be hired by Netflix in the future. The letters could have so stated if that was the intent, but they did not. Instead, they said quite clearly that the waivers were in consideration of particular matters that apparently have all ended by now. The fact that a separate waiver was retained in connection with the 2015 retention reinforces the idea that the waiver was obtained with respect to each specific representation and does not constitute a general agreement to be applied to all future work, even if additional projects are taken on for Netflix.

Even if arguments could be made to the contrary, Netflix is correct in pointing out that waivers of conflicts are only effective to the extent they are specific and are provided with informed consent. I find that there is nothing in the 2012 and 2015 letters and the 2017 and 2018 email correspondence about the new Delaware litigation that is sufficiently clear and specific to

constitute a waiver of the conflicts that are raised by Winston & Strawn's representation of the Relativity debtors in their present disputes with Netflix.

As I noted before, the debtors have generally asserted that there may be other points that are relevant to disqualification issues that they have not addressed. I think, for the reasons I have stated, that Netflix plainly sought to bar Winston & Strawn from continuing with the litigation against Netflix and that the relevant issues likely have been fully briefed. But if the debtors think there are other issues I should consider in that regard, I will give them until Friday morning at 11 a.m. to submit papers raising the additional points.

To the extent that the issues above are the only responses to the disqualification issues, I would rule in Netflix's favor. Even if no disqualification motion has actually been filed, Netflix is correct that it would not be in the interests of the debtors to retain Winston & Strawn unless separate counsel were identified to handle the disputes with Netflix, because it is likely that Winston & Strawn would be disqualified from handling the disputes with Netflix. So unless something new is raised, to the extent that the retention application has not carved out the disputes with Netflix and required them to be handled by other counsel, I would not be willing to approve it.

I am painfully aware that if Winston & Strawn is disqualified from handling the litigation it could have devastating effects on the Relativity debtors. It will almost undoubtedly affect the litigation schedule and the other proceedings that have been scheduled. But Netflix also has rights here, which it has diligently sought to protect. The debtors and Winston & Strawn, for their own reasons, proceeded with their eyes open and with full awareness of the risks of proceeding that way. To some extent, quite frankly, it was a bit reckless to do so. And while it might be harmful to the debtors, I cannot allow that to override Netflix's rights here.

And so, as I stated before, unless something new is raised by Friday, the debtors will be required, as a condition of retaining Winston & Strawn, to find other counsel to handle the Netflix disputes.

Dated: New York, New York
July 6, 2018

                                                **s/Michael E. Wiles**
                                                THE HONORABLE MICHAEL E. WILES
                                                UNITED STATES BANKRUPTCY JUDGE